IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| In re: | | |
|---|---|---|
| BPP TEXAS, LLC, Debtor | § § § § § § | Case No. 10-44378 (Chapter 11) |
| In re: BPP WISCONSIN, LLC, Debtor | § § § § § § | Case No. 10-44379 (Chapter 11) |
| In re: BPP MICHIGAN, LLC, Debtor | § § § § § § § | Case No. 10-44380 (Chapter 11) |
| In re: BPP MINNESOTA, LLC, Debtor | § § § § § § § | Case No. 10-44381 (Chapter 11) |
| In re: BPP ILLINOIS, LLC, Debtor | § § § § § § § | Case No. 10-44382 (Chapter 11) |
| In re: BPP IOWA, LLC, Debtor | § § § § § § § § | Case No. 10-44383 (Chapter 11) **Hearing: December 22, 2010 @ 9:30 a.m.** |

**DEBTORS' EMERGENCY MOTION FOR
INTERIM AND FINAL AUTHORITY TO USE CASH COLLATERAL**

TO THE HONORABLE BRENDA T. RHOADES, CHIEF U.S. BANKRUPTCY JUDGE:

COME NOW BPP Texas, LLC, BPP Illinois, LLC, BPP Iowa, LLC, BPP Michigan, LLC, BPP Minnesota, LLC, and BPP Wisconsin, LLC (collectively, the "Debtors"), the debtors-in-possession in the above styled and numbered bankruptcy cases (the "Bankruptcy Cases"), and file this their *Emergency Motion for Interim and Final Authority to Use Cash Collateral* (the "Motion"), respectfully stating as follows:

## I. PROCEDURAL BACKGROUND

1. On December 21, 2010 (the "Petition Date"), the Debtors filed their respective voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), thereby initiating their Bankruptcy Cases and creating their respective bankruptcy estates (the "Estates").

2. The Debtors continue to operate their businesses and to manage the Estates as debtors-in-possession. No committee, trustee, or examiner has been appointed.

3. The Court has jurisdiction over the Bankruptcy Cases and this Motion under 28 U.S.C. § 1334. Such jurisdiction is core under 28 U.S.C. 157(b)(2). Venue of the Bankruptcy Cases before this Court is appropriate under 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND

4. The Debtors are Delaware limited liability companies. Together, they own and operate twenty-two (22) hotels (the "Hotels"), located in Texas, Illinois, Iowa, Michigan, Minnesota, and Wisconsin. Each of the Hotels underwent significant renovations in 2008 and now operates under a nationally recognized and well respected Wyndham Hotel Group brand. In addition to owning the real property and improvements, the Debtors own the franchise rights to the Hotels. To assist the Debtors with operating the Hotels, the Debtors maintain contracts with

outside, non-debtor companies to assist with the day-to-day management of the Hotels, as well as some of the more sophisticated aspects of managing the Debtors' assets. Since their initial purchase, the Hotels have operated successfully (with performance improving drastically as compared to their competitive sets), and the Debtors have generally remained current on their obligations.

5. However, the deep recession, the tightening of global credit markets, and a downturn in the hospitality industry as whole have affected the Debtors' recent financial performance. Additionally, the Debtors' primary secured lender, Citizens Bank of Pennsylvania ("Citizens"), has alleged that the Debtors are in default of their obligations to Citizens, has accelerated said obligations, and has refused to restructure the terms of those obligations. Citizens initiated multiple state court proceedings against the Debtors, pursuant to which Citizens sought to appoint a receiver, seize the Debtors' operating cash, and foreclose on the Hotels. Citizens' actions threatened to destroy the Debtors' operations and limit recoveries for all other creditors. This, combined with the Debtors' inability to refinance their obligations, forced the Debtors to seek Chapter 11 bankruptcy protections in order to restructure their debts, reorganize their businesses, preserve going concerns, and maximize returns for all creditors.

### III. RELIEF REQUESTED

6. By this Motion, the Debtors request: (i) first, authority to use Cash Collateral (as defined below) on an emergency, interim basis, for the period from the Petition Date to approximately January 10, 2011, or such other date that the Court holds the Final Hearing (defined below) (the "Interim Period"), in the amounts listed, and for the purposes disclosed, on the Interim Budget attached hereto as Exhibit "A" and incorporated herein; and (ii) second, authority to use Cash Collateral for an additional eight (8) month period (the "Final Period"), in

the amounts listed, and for the purposes disclosed, on the Final Budget attached hereto as Exhibit "B" and incorporated herein, subject to any further extension thereof by agreement or by future order of the Court.

## IV. DISCUSSION

### A. THE CASH COLLATERAL

7. The Debtors have cash and accounts on hand as of the Petition Date of upwards of $1.7 million, and will generate postpetition rental revenue, all of which could constitute "Cash Collateral" as that term is defined by section 363(a) of the Bankruptcy Code (as so defined, "Cash Collateral"), although the Debtors and their counsel have yet to complete their review of whether any creditor holds perfected interests in any asset that may constitute Cash Collateral. While the Debtors reserve all of their rights with respect thereto, they recognize that the preferred course is to seek the Court's authority for the use of Cash Collateral pending any potential determination as to the perfection and validity of any alleged interest therein.

8. Specifically, the Debtors believe that Citizens claims an interest in various types of property that would constitute Cash Collateral. While the Debtors reserve all of their rights to contest the following, including the validity, extent, priority, or avoidance of the same, at least pending their final review of all such documents and applicable law, the Debtors believe that Citizens has a colorable claim to rights in Cash Collateral, at least postpetition.

9. The Debtors stress that they are filing this Motion in order to comply with the Bankruptcy Code and to ensure proper respect for their duties and this Court. However, they also stress that they are not by this Motion admitting the validity, extent, priority, or unavoidability of any claim, lien, security interest, or other interest of Citizens or any other entity, and they reserve all their rights with respect thereto, as well as with respect to any

potential claim, defense, counterclaim, or other right they may have with respect to the same. Subject to these reservations, the balance of this Motion assumes, but does not admit, that Citizens holds interests in Cash Collateral within the meaning of the Bankruptcy Code.

B.     **NEED FOR CASH COLLATERAL**

10.     It goes without saying that the Debtors have an immediate, urgent, and ongoing need for the use of their present and future cash. Among other things, the Debtors have ongoing obligations to: (i) pay for employees; (ii) pay for purchases of food and beverage; (iii) pay for upkeep, maintenance, and cleaning of their Hotels; (iv) potentially pay management and franchise fees; (v) pay for utilities; (vi) pay for security related services; (vii) pay for taxes; (viii) pay for the costs of their reorganization efforts, including professional fees and US Trustee fees; and (ix) pay for all of the various goods and services necessary to operate and run the Hotels. Without paying for the same, the Debtors would not be able to keep the Hotels open, would be in violation of franchise agreements and numerous local laws and ordinances, and would not be able to reorganize.

11.     In short, without the use of their cash, the Debtors' businesses would be over, the Hotels closed, and the Bankruptcy Cases dead – to the permanent prejudice of the Debtors, the Estates, and all creditors and parties-in-interest, including primarily Citizens, which would be left with properties subject to vandalism, theft, loss, decay, and a multitude of taxes and other obligations.

12.     At the same time, the Debtors have carefully prepared the Interim Budget and the Final Budget to demonstrate that they can operate within fixed budgeted amounts, while still cash flowing and providing adequate protection. The Debtors request authority to use Cash Collateral for the purposes stated in the budgets, in the amounts budgeted, subject to a monthly

maximum ten (10) percent variance in any given line item and an overall five (5) percent variance monthly variance in the aggregate, for purposes of potentially unforeseen and emergency expenditures.

C. **AUTHORITY TO USE CASH COLLATERAL**

13. Pursuant to the Bankruptcy Code, the Debtors may not use Cash Collateral unless "each entity that has an interest in such cash collateral consents," or unless "the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2)(A)-(B) (2009).

14. The Debtors recognize that, for the first fifteen (15) days after the Petition Date, the Court may authorize the use of Cash Collateral only on an interim basis, and only to "avoid immediate and irreparable harm to the estate." FED. R. BANKR. P. 4001(b)(2). For the reasons stated above, and as will be demonstrated by the evidence, a refusal to permit the Debtors to use Cash Collateral for said fifteen (15) days will lead to immediate and irreparable injury, since the Debtors cannot go fifteen days without paying vendors, employees, and a whole manner of other services and costs. In fact, it would lead to the closing of the Hotels, the end of the Debtors as viable businesses, and the ultimate death of the Bankruptcy Cases.

15. Therefore, the Court may and should authorize the Debtors to use Cash Collateral immediately, on an interim basis in accordance with the Interim Budget, pending a final hearing and a final order on this Motion.

D. **RENTS ARE PROPERTY OF THE ESTATE AND CASH COLLATERAL**

16. The Debtors anticipate that Citizens may argue, pursuant to various deeds of trust and alleged assignments of rent, that Cash Collateral is not property of the Estates and may not therefore be used by the Debtors. The Debtors reserve all their rights to contest any such

argument, including on account of a failure by Citizens to have possession of the Debtors' cash, and they reserve all their rights under applicable non-bankruptcy law. However, given the emergency nature of the Bankruptcy Cases and of this Motion in particular, and six (6) state laws to consult, the Debtors cannot be reasonably expected to fully review, brief, and litigate this potentially critical issue.

17. Nevertheless, even assuming the validity of any assignment of rent provision under nonbankruptcy law, the Debtors may use rents and Cash Collateral as property of their Estates. Whatever alleged interest Citizens may claim in rents from an ownership perspective under nonbankruptcy law is void as against the Bankruptcy Code and is superseded by the clear Congressional dictates concerning property of the Estates and Cash Collateral. Therefore, whether any assignment of rents is allegedly absolute or collateral is irrelevant, since the Bankruptcy Code trumps any such alleged interests.

18. The Bankruptcy Code defines, as property of the Estates, not only all legal and equitable interests of the Debtors in property of almost any kind, but also as the "rents" from "property of the estate." 11 U.S.C. § 541(a)(6). It cannot be denied that the Hotels are property of the Estates, and that "rents" generated by the Hotels are "rents" within the meaning of section 541(a)(6) of the Bankruptcy Code. Therefore, state law assignment of rents aside, the rents generated at the Hotels are property of the Estates under the clear and unambiguous provisions of section 541 of the Bankruptcy Code. And, pursuant to sections 363(b) and 363(c), the Debtors may use property of the Estates in accordance with the Bankruptcy Code. Whatever the rents are under state law, and whoever has interests in them, the Debtors are able to use the same as property of the Estates.

19. Indeed, this very conclusion was recently confirmed by the bankruptcy court in A. *In re Amaravathi Ltd. P'ship*, 416 B.R. 618 (Bankr. S.D. Tex. 2009). In that opinion concerning the rents from an apartment building in which the lender claimed an absolute assignment of rents, the Court looked to the primacy of federal law noting that, while property ownership is normally adjudicated based on state law, "there is an exception if Congress modifies state law through legislation enacted under Congress's authority to establish 'uniform laws on the subject of Bankruptcies throughout the United States,'" and state property law must relent "if some federal interest requires a different result." *Id*. at 622 (*quoting Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L.Ed.2d 136 (1979)). The court analyzed section 541(a)(6) of the Code and concluded that postpetition rents were "rents" within the meaning of the statute. Added to this statutory application, the court noted multiple fundamental bankruptcy policies and goals supporting its construction, including that, by removing rents from property of the estate, the estate would have no source of income and therefore no possibility to rehabilitate, while still being obligated to pay the operating expenses of the apartment buildings for the creditor.

20. The same conclusion should apply with respect to the rents derived from the Hotels: pursuant to section 561(a)(6), those rents are property of the Estate regardless of any alleged absolute assignment of rents in the Deeds of Trust, and the Debtors may use the same pursuant to section 363 of the Bankruptcy Code.

21. In fact, the *Amaravathi* court's admonition concerning fundamental bankruptcy policy should not be taken lightly. There is a very strong federal policy in favor of permitting companies to seek reorganization under Chapter 11. *Ipso facto* clauses, and contractual prohibitions on filing, are void. A state court cannot enjoin a bankruptcy filing. Collateral may be used postpetition. The doors to bankruptcy must stay open regardless of contractual rights

and agreements – otherwise, there is no bankruptcy. If a lender can have absolutely "assigned" to it a debtor's very source of income, and that income not be property of its estate, it is only a matter of time before every lender includes absolute assignments of every kind in every loan document, effectively killing any opportunity to file bankruptcy since the debtor will find not itself as the owner of property, but rather its lender. Such a result would not only violate fundamental Congressional policy; it would turn it on its head. Whatever state law rights may be, they must fall in light of Congressional dictate. After all, most every debtor that seeks bankruptcy protection has already breached a whole host of contractual obligations.

22. There is an additional reason why the Debtors may use the rents from the Hotels under the Bankruptcy Code even if there is an absolute assignment of rents. Namely, section 363(a) of the Bankruptcy Code specifically defines "cash collateral" as:

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, **rents**, or profits of property and the fees, charges, accounts or other **payments for the use or occupancy of rooms and other public facilities in hotels**, motels, or other lodging properties.

11 U.S.C. § 363(a) (emphasis added).

23. In other words, the Bankruptcy Code specifically includes rents, and rents at hotels at that, as Cash Collateral. And, the Bankruptcy Code specifically permits the Debtors to use Cash Collateral. Therefore, even if Citizens ultimately succeeds on any argument that the rents at the Hotels are Citizens' property, Congress has clearly stated that the Debtors may use such rents regardless. For all of the above reasons, the Debtors may use the present proceeds of rents, and any postpetition rents, as Cash Collateral pursuant to section 363(c) of the Bankruptcy Code notwithstanding the Deeds of Trust's assignment of rents provisions, and the Court can and should authorize the same.

E. **ADEQUATE PROTECTION**

24. The Debtors acknowledge that, in order to use Cash Collateral, they must provide adequate protection to Citizens. *See* 11 U.S.C. § 363(e). Whatever the forms of adequate protection may be under section 361 of the Bankruptcy Code, one conclusion is clear: if a lender does not suffer a diminution in the value of its cash collateral as a result of the Debtors' usage thereof, then the lender is adequately protected.

25. Here, the evidence will demonstrate that the Debtors were current on their non-Citizens obligations prior to the Petition Date, and that they will cash flow positive postpetition over time, given the seasonality of the Debtors' businesses. Therefore, not only will Citizens not suffer a diminution in the value of any Cash Collateral interest, that value will increase postpetition. This is the hallmark of adequate protection and is alone sufficient under the facts of these Bankruptcy Cases. Moreover, the Debtors are prepared to submit themselves to the Interim Budget and Final Budget, and to agree to replacement liens in postpetition assets, as well as a superpriority claim under section 507(b) of the Bankruptcy Code, all to the extent of any actual diminution in the value of Cash Collateral as a result of the Debtors' usage thereof, as further adequate protection, subject only to a reasonable carveout for postpetition professional fees.

26. Finally, it must be remembered what the Debtors' usage of Cash Collateral will be for – to preserve and enhance the value of Citizens' collateral. Without Cash Collateral, the Hotels will close and generate no income, collateral will not be repaired and maintained, franchise rights may be lost, and taxes and other expenses will erode the value of Citizens' collateral. The use of cash to preserve and enhance the value of collateral, while benefiting the Estates in general, is exactly the type of permitted Cash Collateral usage and adequate protection envisioned by the Bankruptcy Code.

27. For these reasons and protections, *i.e.* enhancing the value of Cash Collateral, preserving all collateral, detailed budgeting, replacement liens, and a superpriority administrative claim as described above, the Debtors submit that Citizens and any other potential Cash Collateral creditor is more than adequate protected for the Debtors' requested usage of Cash Collateral.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Debtors respectfully request that the Court enter an order: (i) authorizing the Debtors to use Cash Collateral during the Interim Period as discussed above; (ii) scheduling a final hearing on the Motion; (iii) authorizing the Debtors to use Cash Collateral during the Final Period as discussed above, subject to potential future additional requests and extensions; (iv) finding any creditor with an interest in Cash Collateral to be adequately protected under the protections discussed above; and (v) granting the Debtors such other and further relief to which they may show themselves to be justly entitled.

RESPECTFULLY SUBMITTED this 21st day of December 2010.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
Joseph J. Wielebinski
Texas Bar No. 21432400
Davor Rukavina
Texas Bar No. 24030781
Jonathan L. Howell
Texas Bar No. 24053668
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**PROPOSED ATTORNEYS FOR
THE DEBTORS-IN-POSSESSION**

## CERTIFICATE OF SERVICE

An omnibus Certificate of Service concerning all "first day" motions shall be separately filed by the Debtors, which shall reflect service of this Motion.

By: /s/ Davor Rukavina
Davor Rukavina