IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| BPP TEXAS, LLC, *ET AL.*, | § | Case No. 10-44378 |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |

---

## DEBTORS' JOINT CONSOLIDATED PLAN OF REORGANIZATION

---

Joseph J. Wielebinski, Esq.
Texas Bar No. 21432400
Davor Rukavina, Esq.
Texas Bar No. 24030781
Zachery Annable, Esq.
Texas Bar No. 24053075
Jonathan L. Howell, Esq.
Texas Bar No. 24053668
**MUNSCH HARDT KOPF & HARR, P.C.**
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

**ATTORNEYS FOR THE
DEBTORS-IN-POSSESSION**

**DATED: MAY 15, 2011.**

# TABLE OF CONTENTS

I. DEFINITIONS AND INTERPRETATION.............................................................................1

    1.1. Rules of Interpretation ...............................................................................1
    1.2. Definitions..................................................................................................1

II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS............................................8

    2.1. Classification Generally...............................................................................8
    2.2. Unclassified Claims ....................................................................................8
    2.3. Classified Claims and Interests ....................................................................8

III. PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS...........................9

    3.1. Administrative Claim Applications and Deadline ......................................9
    3.2. Treatment of Allowed Administrative Claims............................................9
    3.3. Treatment of Professional Claims...............................................................9
    3.4. Administrative Tax Claims........................................................................10
    3.5 Section 505 .................................................................................................10

IV. PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS; IDENTIFICATION
    OF IMPAIRED CLASSES...........................................................................................11

    4.1. Class 1:    Allowed Priority Claims ...............................................11
    4.2. Class 2:    Secured Tax Claims ......................................................11
    4.3. Class 3:    Lender Secured Claim ..................................................12
    4.4. Class 4:    Conditional Lender Deficiency Claim ..........................18
    4.5. Class 5:    Franchisor Claim ..........................................................20
    4.6. Class 6:    General Unsecured Claims...........................................20
    4.7. Class 7:    Subordinated Claims ....................................................21
    4.8. Class 8:    Equity Interests............................................................21

V. THE REORGANIZED DEBTORS AND POSTCONFIRMATION OPERATIONS ............22

    5.1. Ownership of Reorganized Debtors...........................................................22
    5.2. Managing Member.....................................................................................22
    5.3 Management of Debtors' Hotels.................................................................22
    5.4 Management of Reorganized Debtors ........................................................22
    5.5. Postpetition Operations .............................................................................22
    5.6. Sales of the Hotels .....................................................................................22

VI. MEANS FOR IMPLEMENTATION OF THE PLAN .....................................................23

    6.1. Plan Funding .............................................................................................23
    6.2. Source of Repayment ................................................................................23
    6.3. Interest Guarantee .....................................................................................23
    6.4. Subordinated Claim of Plan Funder...........................................................23
    6.5. FFE Reserve ..............................................................................................24

6.6. Substantive Consolidation ........................................................................................24
6.7. Assumption of Franchise Agreements ........................................................................25
6.8. Assumption of Hotel Management Agreements ..........................................................25
6.9. Assumption of FFC Agreements ................................................................................27
6.10. Omnibus Assumption of Executory Contracts ..........................................................27
6.11. Corporate Existence ..................................................................................................27
6.12. Incorporation of Rule 9019 ......................................................................................27
6.13. Incorporation of Valuation Motion ..........................................................................27
6.14. Rights Under Section 505. ........................................................................................27
6.15. Automatic Stay..........................................................................................................28
6.16. No Transfer Tax ........................................................................................................28
6.17. Transfer to Reorganized Debtors ..............................................................................28
6.18. Incorporation of Exhibits ..........................................................................................28

VII.  ACCEPTANCE OR REJECTION OF PLAN .......................................................................29

7.1. Impairment Controversies..........................................................................................29
7.2. Classes and Claims Entitled to Vote ..........................................................................29
7.3. Class Acceptance Requirement...................................................................................29
7.4. Cramdown..................................................................................................................29
7.5  Combined Voting........................................................................................................29

VIII.  TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS.................30

8.1. Standing to Object to Claims .....................................................................................30
8.2. Objection Deadline ....................................................................................................30
8.3. Creditor Response to Objection .................................................................................30
8.4. No Waiver of Right to Object.....................................................................................30
8.5. Miscellaneous Provisions for Disputed Claims .........................................................30
8.6. Allowance of Disputed Claims ..................................................................................31
8.7  Amendments to Claims; Claims Filed After the Confirmation Date .........................31

IX.  EFFECTS OF PLAN CONFIRMATION .............................................................................32

9.1. Discharge of the Reorganized Debtors .......................................................................32
9.2. Discharge Injunction ..................................................................................................32
9.3. No Liability for Solicitation or Participation .............................................................33
9.4. Release of Liens .........................................................................................................33
9.5. Revesting of Property .................................................................................................33
9.6  General Release ..........................................................................................................33
9.7  Exculpation ................................................................................................................33
9.8  No Discharge of Guarantors ......................................................................................34

X.  CONDITIONS PRECEDENT ..............................................................................................35

10.1. Conditions Precedent to Confirmation and Effectiveness of Plan............................35
10.2. Non-Occurrence of the Effective Date ......................................................................35
10.3. Notice of the Effective Date ......................................................................................35
10.4. Modification of this Plan ...........................................................................................35
10.5. Revocation or Withdrawal of this Plan ......................................................................35

XI.  RETENTION OF JURISDICTION AND CLAIMS ........................................................36

    11.1.  Jurisdiction of Bankruptcy Court ........................................................................36
    11.2.  No Prejudice to Guarantors ................................................................................37
    11.3.  Failure of Bankruptcy Court to Exercise Jurisdiction .......................................37
    11.4.  No Creation of Jurisdiction ................................................................................37
    11.5.  Retention and Preservation of General Rights ...................................................37
    11.6.  Retention and Preservation of Specific Rights ..................................................38

XII.  MISCELLANEOUS PROVISIONS ..................................................................................39

    12.1.  Payment of Statutory Fees .................................................................................39
    12.2.  Exercise of Liens ................................................................................................39
    12.3.  No Admissions ....................................................................................................39
    12.4.  Plan Controls ......................................................................................................39
    12.5.  Governing Law ...................................................................................................39
    12.6.  Substantial Consummation of Plan ....................................................................39
    12.7.  Successors and Assigns ......................................................................................39
    12.8.  Severability .........................................................................................................39
    12.9.  Notices and Distributions ...................................................................................39
    12.10.  Unclaimed Property ..........................................................................................40
    12.11.  Binding Effect ...................................................................................................40
    12.12.  Withholding and Reporting ...............................................................................40
    12.13.  Other Documents and Actions ..........................................................................40
    12.14.  Debtor Notice Person .......................................................................................40

XIII.  CONFIRMATION REQUEST ........................................................................................41

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| BPP TEXAS, LLC, *ET AL.*, | § | Case No. 10-44378 |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |

## DEBTORS' JOINT CONSOLIDATED PLAN OF REORGANIZATION

BPP Texas, LLC, BPP Illinois, LLC, BPP Iowa, LLC, BPP Michigan, LLC, BPP Minnesota, LLC, and BPP Wisconsin, LLC hereby propose the following *Joint Consolidated Plan of Reorganization* pursuant to the provisions of section 1121 of the Bankruptcy Code:

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

1.1 <u>Rules of Interpretation</u>. Unless otherwise specified, all Section, Article, and Exhibit references in this Plan are to the respective Section in, or Article of, this Plan, as the same may be amended, waived or modified from time to time. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa. In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.2 <u>Definitions</u>. Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Unless otherwise provided in this Plan, the following terms have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

**"<u>Administrative Claim</u>"** means a Claim for any cost or expense of administration of the Bankruptcy Case under section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Consolidated Estate pursuant to 28 U.S.C. § 1930, and further including a Professional Claim.

**"<u>Administrative Claims Bar Date</u>"** means the day that is thirty (30) days after the Effective Date.

**"<u>Adversary Proceeding</u>"** means that adversary proceeding commenced on April 7, 2011 by the Debtors against the Lender and T.R. Engle Group, LLC in the Bankruptcy Court, styled *BPP Texas, LLC, et al. v. Citizens Bank of Pennsylvania and T.R. Engle Group, LLC* and assigned adversary proceeding number 11-04070.

**"Allowed"** as it relates to any type of Claim provided for under this Plan, means a Claim: (i) which has been scheduled as undisputed, noncontingent and liquidated in the Schedules in an amount other than zero or unknown, and as to which: (a) no proof of Claim has been timely filed, and (b) no objection has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline); (ii) as to which a proof of Claim has been timely filed and either: (a) no objection thereto has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline), or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (iii) which has been expressly allowed under the provisions of this Plan; or (iv) which has been expressly allowed by Final Order of the Bankruptcy Court.

**"Allowed Administrative Claim"** means: (i) an Administrative Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to Allow the same; and (ii) an Administrative Claim which: (a) is incurred by the Debtors after the Petition Date in the ordinary course of business operations or pursuant to an order entered by the Bankruptcy Court granting automatic Administrative Claim status; (b) is not disputed by the Debtors or the Reorganized Debtors; and (c) does not require approval from the Bankruptcy Court to become Allowed.

**"Allowed Priority Claim"** means a Priority Claim that has been Allowed (but only to the extent Allowed).

**"Allowed Secured Claim"** means a Secured Claim that has been Allowed (but only to the extent Allowed).

**"Allowed Unsecured Claim"** means an Unsecured Claim that has been Allowed (but only to the extent Allowed).

**"Avoidance Actions"** means any and all rights, claims or actions which the Debtors may assert on behalf of the Estates under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code, except to the extent that any such rights, claims, or actions are released or waived in this Plan.

**"Ballot"** means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the Disclosure Statement provided to each holder of a Claim entitled to vote to accept or reject this Plan.

**"Bankruptcy Case"** means the jointly administered bankruptcy case of the Debtors, pending in the Bankruptcy Court under jointly administered Case Number 10-44378, and includes, as necessary, each member case of the Debtors that is jointly administered under the above case number.

**"Bankruptcy Code"** means 11 U.S.C. §§ 101, *et. seq.*, in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any

such amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

"**Bar Date**" means the date set by the Bankruptcy Court for the filing of proofs of claims against the Debtors, which date is April 21, 2011 for creditors other than Governmental Units, and, with respect to Governmental Units, which date is June 21, 2011.

"**Business Day**" means any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

"**Cash Collateral**" has the meaning assigned to it in section 363(a) of the Bankruptcy Code.

"**Claim**" means a claim against one or more of the Debtors, one or more of the Estates, and/or property of one or more of the Debtors or the Estates, as such term is otherwise defined in section 101(5) of the Bankruptcy Code, arising prior to the Effective Date.

"**Claims Objection Deadline**" means the date by which parties authorized by the Plan may file any objection to a Claim, which date shall be sixty (60) days after the Effective Date, except with respect to Administrative Claims as otherwise provided for herein.

"**Class**" means one of the categories of Claims and Interests established under Article II of this Plan.

"**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

"**Confirmation Hearing**" means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

"**Consolidated Estate**" means the substantively consolidated estate of the Debtors created pursuant to section 6.6 of the Plan.

"**Creditor**" means the holder of any Claim entitled to distributions with respect to such Claim.

**"Cure Claim"** shall refer to the payment or other performance required to cure any existing default under an Executory Contract in accordance with section 365 of the Bankruptcy Code.

**"Debtor Notice Person"** has the meaning assigned to it in section 12.14 of this Plan.

**"Debtors"** means BPP Texas, LLC, BPP Wisconsin, LLC, BPP Michigan, LLC, BPP Minnesota, LLC, BPP Illinois, LLC, and BPP Iowa, LLC.

**"Disallowed Claim"** means, as it relates to any type of Claim provided for under this Plan, a Claim or portion thereof that: (i) has been disallowed by a Final Order of the Bankruptcy Court; (ii) is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a proof of Claim was not filed by the Bar Date; or (iii) is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the Bar Date, if the filing of such proof of Claim is otherwise required.

**"Disclosure Statement"** means the Disclosure Statement with respect to this Plan, approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on confirmation of this Plan, either in its present form or as it may be altered, amended or modified from time to time.

**"Disputed Claim"** means any Claim or any portion thereof which is neither Allowed nor is a Disallowed Claim as of the close of the Claims Objection Deadline. In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan unless the party responsible for the payment thereof, the objecting party, and the holder thereof agree otherwise or unless otherwise ordered by the Bankruptcy Court; *provided*, *however*, that nothing in this definition of "Disputed Claim" is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under section 502(c) of the Bankruptcy Code. Without limiting any of the foregoing, but subject to the provisions of this Plan, a Claim that is the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim, as of the Claims Objection Deadline, shall be a Disputed Claim unless and until the entry of a Final Order providing otherwise.

**"Effective Date"** means the first Business Day fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) days after the Confirmation Date, and upon which the conditions to the effectiveness of the Plan set forth in Article X hereof are satisfied.

**"Estates"** means the estates created for the Debtors pursuant to section 541 of the Bankruptcy Code and any other applicable provision thereof, prior to the Effective Date.

**"Executory Contract"** means, collectively, "executory contracts" and "unexpired leases" of the Debtors as of the Petition Date as such terms are used within section 365 of the Bankruptcy Code.

"**Federal Postjudgment Interest Rate**" means the rate of interest provided for in 28 U.S.C. § 1961(a).

"**FFC**" means FFC Capital Corporation.

"**FFC Agreements**" means the agreements, or any amendments or modifications thereto, between the Debtors and FFC under which FFC provides asset management services to the Debtors.

"**FFE Reserve**" means the reserve created pursuant to section 6.4 of the Plan.

"**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

"**Final Order**" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which: (i) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (ii) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

"**Franchise Agreements**" means, collectively, the agreements, or any amendments or modifications thereto, between the Debtors and the Franchisors under which the Debtors hold franchise rights regarding the Hotels.

"**Franchisors**" means Days Inn Worldwide, Inc., Baymont Franchise Systems, Inc., Travelodge Hotels, Inc., Super 8 Worldwide, Inc., and Howard Johnson International, Inc.

"**Guarantors**" means Fine Capital Associates, L.P. and FFC Partnership, L.P.

"**Governmental Unit**" means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

"**Hotels**" means, collectively, the twenty-two (22) Wyndham branded hotels owned and operated by the Debtors, including real property, improvements, furniture, fixtures, and equipment, generally located at the following locations: (i) 9625 S. 76th Ave., Bridgeview, Illinois 60455; (ii) 1000 W. Devon Ave., Elk Grove Village, Illinois 60007; (iii) 2881 Touhy Ave., Elk Grove Village, Illinois 60007; (iv) 2501 52nd Ave., Moline, Illinois 61265; (v) 1585 Naperville, Naperville, Illinois 60563; (vi) 540 Milwaukee Ave., Prospect Heights, Illinois 60070; (vii) 220 S. Lyford Rd., Rockford, Illinois 61108; (viii) 616 33rd Ave., Cedar Rapids, Iowa 52404; (ix) 6310 N. Brady St., Davenport, Iowa 52806; (x) 4855 28th St., Grand Rapids, Michigan 49512; (xi) 1739 Old Hudson Rd., St. Paul, Minnesota 55106; (xii) 2711 Interstate-35, Austin, Texas 78741; (xiii) 4211 Interstate-35, Denton, Texas 76207; (xiv) 210 Westhill Blvd., Appleton, Wisconsin 54914; (xv) 2305 Craig Rd., Eau Claire, Wisconsin 54701; (xvi) 2870 Ramada Way, Green Bay, Wisconsin 54304; (xvii) 2150 Rose St., La Crosse, Wisconsin 54603; (xviii)

4202 East Towne Blvd., Madison, Wisconsin 53704; (xix) 5485 N. Port Washington Rd., Glendale, Wisconsin 53217; (xx) 1201 W. College Ave., Oak Creek, Wisconsin 53154; (xxi) 115 N. Mayfair Rd., Wauwatosa, Wisconsin 53226; and (xxii) 116 S. 17 Ave., Wausau, Wisconsin 54401.

"**Hotel Management Agreements**" means, collectively, the agreements, or any amendments or modifications thereto, between the Debtors and Interstate or between the Debtors and Janus under which either Interstate or Janus provides hotel management services, employees, and other services to the Debtors for the Hotels.

"**Interest Guarantee**" has the meaning assigned to it in section 6.3 of the Plan.

"**Interests**" means any ownership of any equity in the Debtors, including, as may be applicable, any membership interest, stock, share, or other equity ownership.

"**Interstate**" means Interstate Management Company, LLC.

"**Janus**" means Janus Hotel Management Services, LLC.

"**Lender**" means Citizens Bank of Pennsylvania.

"**Lender Claim**" means any and all Claims, liens, security interests, and rights held by the Lender against any and all of the Debtors and the Estates, and their property, including as asserted by the Lender in proofs of claim filed by the Lender against the Debtors.

"**Person**" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions thereof.

"**Petition Date**" means December 21, 2010.

"**Plan**" means this *Debtors' Joint Consolidated Plan of Reorganization*, either in its present form or as it may be altered, amended or modified from time to time.

"**Plan Funder**" means BPP Plan Funding, LLC, a Delaware Limited Liability Company. The Plan Funder is an insider of the Debtors and of the Guarantors.

"**Plan Funding**" means the amount of funds contributed by the Plan Funder to the Plan, as specified in section 6.1 of the Plan.

"**Priority Claim**" means any Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim or that is a Secured Tax Claim.

"**Professional**" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

**"Professional Claim"** means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Case.

**"Rejection Claim"** means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

**"Reorganized Debtors"** means the Debtors on and after the Effective Date.

**"Schedules"** means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by the Debtors with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

**"Secured Claim"** means a Claim that is alleged to be secured, in whole or in part, (i) by a lien against an asset of the Debtors or the Estates to the extent such lien is valid, perfected and enforceable under applicable non-bankruptcy law and is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent that such Claim is secured within the meaning of section 506(a) of the Bankruptcy Code; or (ii) as a result of rights of setoff under section 553 of the Bankruptcy Code.

**"Secured Tax Claim"** means a Claim of a Governmental Unit for the payment of *ad valorem* real property and business personal property taxes that is secured by property of the Debtors or the Estates.

**"Substantial Consummation"** means the earliest day on or after the Effective Date on which any of the following occurs: (i) the Reorganized Debtors make any payment required by this Plan; (ii) the Reorganized Debtors execute new loan documents with the Lender regarding the modification of the Lender's claims under this Plan; (iii) the Court enters a Final Order on the Professional Claim of the Debtors' general bankruptcy counsel; or (iv) the Court otherwise finds that Substantial Consummation within the meaning and understanding of the Bankruptcy Code has occurred.

**"Unsecured Claim"** means any alleged Claim against one or more of the Debtors that is not secured by a valid, enforceable, and unavoidable lien against any asset of the Debtors or the Estates, but excluding any Administrative Claim, Priority Claim, Secured Claim, but including a Secured Claim to the extent not an Allowed Secured Claim but otherwise an Allowed Claim.

**"Voting Deadline"** means the period established by the Bankruptcy Court within which Ballots may be cast on the Plan.

**ARTICLE II.**
**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

2.1     Classification Generally.     All Claims and Interests, except Administrative Claims, are placed in Classes under the Plan.  A Claim is classified within a particular Class only to the extent that the Claim qualifies under the description of that Class.  A Claim which is properly includible in more than one Class is only entitled to inclusion within a particular Class to the extent that it qualifies under the description of such Class, and shall be included within a different Class(es) to the extent that it qualifies under the description of such different Class(es).

2.2     Unclassified Claims.  The following types of Claims are not classified under the Plan:

Administrative Claims

2.3     Classified Claims and Interests.  Claims are classified under this Plan as follows:

Class 1:   Allowed Priority Claims

Class 2:   Secured Tax Claims

Class 3:   Lender Secured Claim

Class 4:   Conditional Lender Deficiency Claim

Class 5:   Franchisor Claim

Class 6:   General Unsecured Claims

Class 7:   Subordinated Claims

Class 8:   Equity Interests

# ARTICLE III.
# PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS

3.1     Administrative Claim Applications and Deadline.   Holders of Administrative Claims, including Professional Claims and Cure Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtors' business which may be paid in the ordinary course of the Debtors' business without order of the Bankruptcy Court; and (c) Administrative Claims that constitute fees or charges assessed against the Estates under Chapter 123, Title 28, United States Code, must by no later than the Administrative Claims Bar Date: (x) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (y) serve a copy of such application on the Debtors and/or Reorganized Debtors, counsel for the Debtors and/or Reorganized Debtors, the United States Trustee, and all other parties otherwise entitled to notice thereof.   Failure to file and serve such application by the Administrative Claims Bar Date shall result in the Administrative Claim being forever barred and discharged.   Except as specifically provided in this Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

3.2     Treatment of Allowed Administrative Claims.   Unless previously paid, each holder of an Allowed Administrative Claim, including a Professional Claim and Cure Claim, shall receive in full satisfaction, release and discharge of, and in exchange for such Allowed Administrative Claim, from the Reorganized Debtors, jointly and severally: (i) the amount of such Allowed Administrative Claim, in cash, and without interest, attorney's fees (except as Allowed by the Bankruptcy Court), or costs, on the earlier of: (a) ten (10) Business Days after the Effective Date; or (b) the date that is ten (10) Business Days after such Administrative Claim becomes an Allowed Administrative Claim; or (ii) such other treatment as may be agreed upon in writing by the holder of such Claim and the Debtors or the Reorganized Debtors, as applicable; *provided*, *however*, that Allowed Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtors' businesses which may be paid in the ordinary course of the Debtors' businesses without order of the Bankruptcy Court, shall be paid by the Debtors and/or the Reorganized Debtors, as appropriate, in accordance with the agreements related thereto, and subject to the Debtors' and/or the Reorganized Debtors', as appropriate, right to contest the allowance or payment of same.

3.3     Treatment of Professional Claims.   Professional Claims become Allowed the same as Administrative Claims in this Article (Section 3.1), and are treated the same as Administrative Claims in this Article (Section 3.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement for filing an application as provided for in Section 3.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part shall, with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 3.1 and shall be subject to such law, rules, and procedures as would be otherwise applicable to the same outside of this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court, but subject to disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement ten (10) days after the Administrative Claims Bar Date unless, upon motion

and notice, the Bankruptcy Court extends such period; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; and (v) any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis.

3.4   <u>Administrative Tax Claims</u>.   For the avoidance of doubt, an Administrative Claim for taxes, including a claim resulting from any *ad valorem* taxes, which is solely an Administrative Claim and is not a prepetition claim or Priority Tax Claim: (i) is not subject to any filing requirement under sections 3.1 or 3.2 of the Plan; (ii) is not discharged or modified by the Plan; (iii) shall be timely paid by the Reorganized Debtors as otherwise applicable, together with all applicable interest, costs, and fees; and (iv) shall continue to be secured by all applicable non-bankruptcy liens and rights notwithstanding anything contained in the Plan to the contrary.

3.5   <u>Section 505</u>.   For the avoidance of doubt, and without limiting the generality of any similar provision of this Plan, the Debtors and the Estates reserve all rights under section 505 of the Bankruptcy Code, as otherwise applicable, to contest Priority Tax Claims and to seek appropriate determinations under said section 505 with respect thereto, all of which rights are transferred under this Plan to the Reorganized Debtors.

## ARTICLE IV.
## PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS; IDENTIFICATION OF IMPAIRED CLASSES

4.1     Class 1:  Allowed Priority Claims.

    4.1.1   Treatment.  Each Allowed Priority Claim shall be paid in full satisfaction, release and discharge of and in exchange for such Allowed Priority Claim by the Reorganized Debtors: (i) the amount of such Allowed Priority Claim, in cash, and without interest, attorney's fees, or costs, on the earlier of: (a) ten (10) Business Days after the Effective Date if by then Allowed or ten (10) Business Days after the Claims Objection Deadline if no objection thereto is timely filed; or (b) the date that is ten (10) Business Days after such Priority Claim becomes an Allowed Priority Claim; or (ii) such other treatment as may be agreed upon in writing by the holder of such Claim and the Debtors or the Reorganized Debtors, as applicable.

    4.1.2   Impairment.  Class 1 is not impaired under the Plan.

4.2     Class 2:  Secured Tax Claims.

    4.2.1   Retention of Liens.  Each holder of a Secured Tax Claim shall retain all liens securing the same, which liens shall survive confirmation of this Plan with the same priority, extent, and validity that otherwise exists; *provided, however,* that no such lien may be foreclosed on unless the Reorganized Debtors default with respect to the particular holder of an Allowed Secured Tax Claim seeking to foreclose on such lien; *provided further, however*, that any such foreclosure must be conducted in compliance with all applicable non-bankruptcy law otherwise governing the same.

    4.2.2.   Treatment.  Each Secured Tax Claim, to the extent Allowed, shall be paid in full satisfaction, release and discharge of, and in exchange for, such Allowed Secured Tax Claim and any lien securing the same, by the Reorganized Debtors as follows:

    (i)    Balloon Payment.  Each Allowed Secured Tax Claim shall be paid in full at the closing of any sale of the Hotel to which such Claim and resulting lien attaches, as a condition of such sale, either from the gross proceeds of such sale or from cash held by the Reorganized Debtors, at the Reorganized Debtors' discretion. Such payment shall include all applicable interest, but shall not include penalties or any other charge not permitted by the Bankruptcy Code.

    (ii)    Interest.  Prior to the payment in full of an Allowed Secured Tax Claim as above, each Allowed Secured Tax Claim shall accrue interest at the applicable rate as specified by non-bankruptcy law.

    (iii)    Amortization.  Prior to the payment in full of an Allowed Secured Tax Claim as above, the Reorganized Debtors shall amortize such claim, and make principal payments on the same, on a term of forty-eight (48) months from the Effective Date, such that each

payment of principal shall equal 1/48th of the Allowed amount of such Secured Tax Claim.

(iv) <u>Periodic Payments</u>. Payments of interest under subsection (ii) above and of principal under subsection (iii) above shall be made quarterly and shall be paid in arrears on the first business day of any given quarter for the past calendar quarter, with the first such payment being due after the expiration of one full calendar quarter following the Effective Date.

(v) <u>Payments for Disputed Claim</u>. In the event that the Debtors or Reorganized Debtors contest the allowance of any Secured Tax Claim, and provided that such contest otherwise complies with the requirements of this Plan, the Reorganized Debtors shall nevertheless make payments on account of such Secured Tax Claim, including of principal and interest under subsections (ii) and (iii) above, on the portion of the Secured Tax Claim that is not objected to. Upon the resolution of any such contest, the Reorganized Debtors shall, no later than five (5) Business Days after the entry of a Final Order on the same, pay the holder of such Secured Tax Claim such additional principal and interest as would otherwise have been payable under this Plan had the Secured Tax Claim been Allowed on the Effective Date in the amount that it is Allowed at by such Final Order.

(vi) <u>Prepayment</u>. Nothing contained in this Plan shall prevent the Reorganized Debtors from prepaying in full or in part any Secured Tax Claim, in which case interest shall be paid only as otherwise appropriate as a result of any such prepayment.

4.2.3. <u>Default</u>. In the event of a failure by the Reorganized Debtors to make any payment required in this section 4.2 of the Plan, the affected holder of the Allowed Secured Tax Claim may transmit notice of such failure to the Reorganized Debtors by transmitting the same, by overnight mail, to the Debtor Notice Person. In the event the Reorganized Debtors do not cure such failure within five (5) Business Days of the transmittal of such notice, the Reorganized Debtors shall be in default of their obligations to said holder and said holder may exercise any and all rights against the Reorganized Debtors and their property.

4.2.4 <u>Impairment</u>. Class 2 is impaired under the Plan.

4.3 <u>Class 3: Lender Secured Claim</u>.

4.3.1. <u>Allowance of Claim</u>. The Lender Secured Claim is not Allowed by this Plan, and this Plan is wholly without prejudice to all issues concerning the allowance of the Lender Claim or the Lender Secured Claim. The Lender Claim and the Lender Secured Claim will be Allowed as otherwise appropriate in the Bankruptcy Case, and subject to the Debtors' objections thereto as asserted in the Adversary Proceeding.

4.3.2. <u>Determination of Secured Status</u>.

(i)    <u>Default Treatment</u>.  This Plan treats the Lender Secured Claim as fully secured in the amount that the Lender Claim is Allowed.

(ii)    <u>Alternate Treatment</u>.  If the Bankruptcy Court, in connection with the Confirmation Hearing, rejects the secured treatment proposed in subsection (i) above as a result of any objection by the Lender to the same, then the Lender Secured Claim shall be a secured claim in the maximum amount of: (a) $55,000,000.00; *plus* (b) the amount of Cash Collateral held by the Debtors as of the Confirmation Date, less the amount of such Cash Collateral actually approved for use by the Debtors pursuant to any Cash Collateral order entered in the Bankruptcy Case and actually used or accrued for use by the Debtors; *less* (c) the amount of adequate protection payments made by the Debtors to the Lender under any order entered in the Bankruptcy Case, including all such payments made under section 362(d)(3)(B) of the Bankruptcy Code; *provided, however,* that the Lender Claim is actually Allowed in such amount.  If the Lender Claim is Allowed in a lesser amount, then the Lender Secured Claim shall be the amount so Allowed.

(iii)    <u>Population of Class 4</u>.  If the alternate treatment proposed in subsection (ii) above is triggered, then Class 4 under this Plan shall be populated with the difference between the total Allowed amount of the Lender Claim in the Bankruptcy Case, less the size of the Lender Secured Claim as determined by subsection (ii) above.

(iv)    <u>No Prejudice Regarding Cash Collateral</u>.  The Debtors, in the Adversary Proceeding, have argued that the Lender does not have a perfected interest in Cash Collateral.  Nothing in this Plan prejudices the Debtors' arguments and rights with respect to the same, and the Debtors reserve their right to continue with said arguments.  Thus, unless ordered otherwise by the Bankruptcy Court in connection with the Confirmation Hearing or otherwise, the amount of Cash Collateral for use in subsection (ii) above shall be zero.

4.3.3  <u>Treatment</u>.  In full and final satisfaction, discharge, and release of the Lender Secured Claim, as Allowed, the Reorganized Debtors shall pay the Allowed Lender Secured Claim as follows:

(i)    <u>Sale of the Hotels</u>.  The Reorganized Debtors shall commence selling the Hotels as of the Effective Date, including any potential or actual sales pending as of such date, and shall complete selling all of the Hotels by the end of the forty-eighth (48th) month following the Effective Date, with the first such month being the month immediately following the month in which the Effective

Date occurs. The Reorganized Debtors shall have the discretion to determine when, and in which order, to sell which of the Hotels.

(ii) <u>Proceeds of Sales</u>. To the extent any portion of the Lender Secured Claim, as Allowed, then remains unpaid, the Net Sales Proceeds of each sale of the Hotels shall be paid to the Lender at the closing of the sale of such Hotel. As used in this Plan, "<u>Net Sales Proceeds</u>" means the sales price received for the Hotel, less: (a) unpaid *ad valorem* taxes against the Hotel; (ii) brokerage fees otherwise payable for the sale; (iii) ordinary and necessary closing costs; (iv) funds needed to pay and release any other lien against the Hotel, provided that such lien survives the confirmation of the Plan; and (v) such other fees and expenses that the Lender agrees to. Should there be a dispute concerning the Net Sales Proceeds payable to the Lender from any sale, and provided that the Net Sales Proceeds under the Reorganized Debtors' view of such dispute equals at least the minimum Net Sales Proceeds required by this Plan, the Reorganized Debtors may close the sale and escrow the funds in dispute with a title company or with the Lender, and submit the matter to the Bankruptcy Court or such other court as may be appropriate for adjudication.

(iii) <u>Minimum Price</u>. The Reorganized Debtors shall be authorized to sell a Hotel only if the Net Sales Proceeds will equal at least the minimum sale price for that Hotel as provided for in section 4.3.4 below. In the event the Reorganized Debtors determine to close a sale of a Hotel which would yield the Lender less than such amount, the Reorganized Debtors may pay the difference, in order to close the sale, from any source other than funds belonging to the Reorganized Debtors from the operation of their businesses, in which case the sale shall proceed and may close under this Plan.

(iv) <u>Interest</u>. The Lender Secured Claim, to the extent Allowed, shall bear interest at the rate of 4.25% per annum. The Reorganized Debtors shall make monthly payments to the Lender of said interest in arrears, commencing the month after the calendar month in which the Effective Date occurs (by way of example, if the Effective Date occurs on August 10, 2011, the first interest payment shall be due on October 1, 2011 for the period between August 10, 2011 and September 30, 2011). Such interest payments shall be recalculated monthly based on any principal payments on the Lender Secured Claim during the month before, and shall be prorated for any month in which such a principal payment occurs.

(v) <u>Guarantee of Interest</u>. The interest payments on the Lender Secured Claim required by subsection (iii) above are guaranteed by the Plan Funder as provided for in section 6.3 of the Plan.

(vi) <u>Remaining Cash</u>.  At the conclusion of the sale of all of the Hotels, in the event that the Lender Secured Claim, as Allowed and together with all applicable interest, is not paid in full, all remaining cash held by the Reorganized Debtors, including funds remaining in the FFE Reserve, shall be used to pay any amount of the Allowed Lender Secured Claim remaining unpaid, until the Allowed amount thereof is paid in full, together with all applicable interest.

4.3.4. <u>Minimum Sale Prices</u>.  The Debtors believe that the Lender will agree to minimum Net Sales Proceeds for each Hotel, which the Lender has already provided to the Debtors, and they invite the Lender to negotiate the same with the Debtors.  If the Lender so agrees, it shall be without prejudice to any and all of its rights to object to any portion of this Plan or to anything else in the Bankruptcy Case.  If the Lender so agrees, then either prior to the Confirmation Hearing, or after, the Debtors shall file with the Bankruptcy Court, under seal, a schedule of the same.  No person other than the Debtors (or Reorganized Debtors), the Lender, and the United States Trustee shall have any ability to obtain a copy thereof.  If the Lender does not agree to minimum sales prices for the Hotels, then the minimum sales price for each Hotel shall be a price which shall yield Net Sales Proceeds at least in the amount of the Lender's appraisals of the Hotels as introduced into evidence at the April 8, 2011 hearing in the Bankruptcy Case on the Lender's motion for relief from the automatic stay, unless the Bankruptcy Court orders otherwise in connection with the Confirmation Hearing.

4.3.5 <u>Credit Bid Rights</u>.  This section 4.3.5 of the Plan governs the exercise by the Lender of its credit bid rights with respect to any sale of the Hotels by the Reorganized Debtors.

(i) <u>Presumption of Credit Bid Rights</u>.  Unless the Bankruptcy Court enters a Final Order disallowing any lien of the Lender in any Hotel which the Debtors seek to sell, the Lender shall be presumed to have a valid lien in such Hotel (including real property, improvements, furniture, fixtures, and equipment) and a valid right to credit bid the Lender Secured Claim, to the extent Allowed and remaining unpaid, in connection with such sale.

(ii) <u>Mechanism of Credit Bid</u>.  Immediately upon executing any sales contract with any third party for the sale of a Hotel, the Reorganized Debtors shall inform the Lender of the purchase price and shall provide a copy of such contract to the Lender.  Upon such notification, the Lender shall have five (5) Business Days to credit bid against the Hotel by offering, by way of credit bid, an amount for the Hotel higher than such third party's offer.  If the Lender so credit bids, the Reorganized Debtors may seek a higher offer from such third party which, if obtained, the Lender may again credit bid against for a higher amount within five (5) Business Days of a sale contract being executed containing such

higher amount, and so on, until either such third party or the Lender, by credit bid, offers the highest amount.

(iii) <u>Sale to Lender Upon Credit Bid</u>.  If the Lender, by credit bid, offers the highest amount for any given sale, the Reorganized Debtors shall convey the Hotel to the Lender by special warranty deed, subject to any and all higher priority liens against such Hotels that then exist, but provided that such liens survive the confirmation of the Plan.

(iv) <u>Credit for Purchase Price</u>.  In the event of a sale to the Lender by credit bid, the Net Sales Proceeds shall be calculated as otherwise provided above, but without deduction for any brokerage fees, and shall be applied against the Lender Secured Claim the same as though paid by the Reorganized Debtors from a sale as provided for above.

4.3.6. <u>Recovery Against Guarantors</u>.  In the event that the Lender actually recovers or receives any funds or payments from the Guarantors, and any such recovery or payment is otherwise allocated to the Debtors' principal obligations to the Lender, such amount shall be credited against the Lender Secured Claim under this Plan and interest payable under section 4.3.3(iv) above shall be recalculated accordingly the same as though such recovery was a principal payment by the Reorganized Debtors.  In the event that Class 4 under this Plan is populated, any such recovery shall first be applied against the Reorganized Debtors' obligations to Class 4 until the same is paid in full, prior to any application of such recovery to the Lender Secured Claim.  Notwithstanding anything contained in this Section 4.3.6 or elsewhere in this Plan to the contrary, nothing in this Plan shall prejudice or otherwise adversely affect the Guarantors' right to apply or credit any recovery by the Lender (including the distributions to be made under this Plan) or any payment to the Lender to the outstanding obligations of the Debtors, if any, in any manner as may be authorized or permitted under any contract or at law or in equity.

4.3.7 <u>Preservation of Liens</u>.  The Lender shall retain all of its liens and security interests against the Debtors and the Estates, to the extent otherwise valid, perfected, not avoidable, and enforceable, and nothing in this Plan shall discharge, prejudice, or release any such liens and security interests, except only as provided by section 4.3.8 below.

4.3.8 <u>Release of Lien</u>.  With respect to each sale of a Hotel, and provided that the Reorganized Debtors are not otherwise in default to the Lender under this Plan and that the Net Sales Proceeds from any given sale equals at least the minimum amount required by this Plan, the Lender shall release its liens and security interests with respect to the Hotel the subject of such sale, including the real property, improvements, fixtures, furniture, and equipment, conditioned only on the Lender receiving the minimum Net Sales Proceeds required for such sale.  The Reorganized Debtors may commence any appropriate injunctive proceeding to obtain such release if the Lender refuses to so release its lien.

4.3.9 <u>Insider Sales</u>. Nothing in this Plan limits or prevents the sale by the Reorganized Debtors of any Hotel to an insider or affiliate of the Debtors or the Reorganized Debtors, so long as all other requirements for such sale, including Net Sales Proceeds and credit bid rights, are complied with.

4.3.10 <u>Default</u>. In the event of a failure by the Reorganized Debtors to make any interest payment to the Lender as required in this section 4.3 of the Plan, the Lender may transmit notice of such failure to the Reorganized Debtors by transmitting the same, by overnight mail, to the Debtor Notice Person. In the event the Reorganized Debtors do not cure such failure within five (5) Business Days of the transmittal of such notice, the Reorganized Debtors shall be in default of their obligations to the Lender on account of the Lender Secured Claim, and the Lender may exercise any and all rights against the Reorganized Debtors and their property, including through initiating foreclosure proceedings or other appropriate proceedings against the Reorganized Debtors and their property, including the Hotels.

4.3.11 <u>Rights Upon Default</u>. In the event of any uncured default by the Reorganized Debtors to the Lender, with respect to the Lender Secured Claim or otherwise, and in addition to all other rights of the Lender regarding the same or otherwise, the Reorganized Debtors shall assert no defenses against, and shall not attempt to prevent, any action by the Lender to obtain possession of the Hotels, including any foreclosure action or receivership action that may be initiated by the Lender; *provided, however,* that such waiver of rights by the Reorganized Debtors shall in no way waive, release, or prejudice any other rights, claims, defenses, affirmative defenses, or counterclaims that the Reorganized Debtors may have. The only defense that may be asserted by the Reorganized Debtors in such an event is a defense that no uncured default with respect to the Reorganized Debtors' obligations to the Lender under the Plan exist, and all other defenses and rights shall be waived by the Reorganized Debtors, even if they arise after the Effective Date. If requested by the Lender in lieu of foreclosure, receivership, or other proceedings, the Reorganized Debtors shall execute deeds and instruments of conveyance transferring all of their interests in the Hotels to the Lender or such other person as may be designated by the Lender for such purpose. The Lender may enforce this obligation by injunction, specific performance, or any other appropriate mechanism.

4.3.12 <u>Rights With Respect to Guarantors</u>. For the avoidance of doubt, nothing in this Plan: (i) discharges, prejudices, or releases any claim that the Lender may have against any person other than the Debtors and Reorganized Debtors for or on account of any claim by the Lender against the Debtors, including, without limitation, any such claim against the Guarantors; or (ii) discharges, prejudices or releases any claim, right or defense the Guarantors may now or in the future have against the Lender, including without limitation, the fact, claim, right or defense that all amounts to be paid to the Lender under this Plan shall reduce or be credited to the outstanding obligations covered by the Guarantors' guarantee(s).

4.3.13 <u>Cross-Default and Cross-Collateralization</u>. To the extent necessary in light of the substantive consolidation of the Debtors, all obligations of the Reorganized Debtors to the Lender under this Plan with respect to the Lender Secured Claim as

Allowed, modified, and treated by this Plan, shall be cross-defaulted and cross-collateralized as between the Reorganized Debtors and their property, such that each Reorganized Debtor shall continue to be liable to the Lender for such Lender Secured Claim with each other Reorganized Debtor, as such Lender Secured Claim is Allowed, modified, and treated by this Plan.

     4.3.14 <u>Impairment</u>.  Class 3 is impaired under this Plan.

4.4     <u>Class 4: Conditional Lender Deficiency Claim</u>.

     4.4.1   <u>Population of Class</u>.  Class 4 shall be populated only as the same may be triggered under section 4.3.2(ii) of the Plan.

     4.4.2   <u>Identification of Claim</u>.  If Class 4 is populated, Class 4 shall be an Unsecured Claim of the Lender in the amount specified by section 4.3.2(iii) of the Plan, and only in the amount otherwise Allowed, subject to the Debtors' and the Reorganized Debtors' objections to the allowance of the Lender Claim, which objections, and rights related to the same, are not prejudiced by this Plan.

     4.4.3   <u>Treatment</u>.  In full and final satisfaction, discharge, and release of the Class 4 Lender Claim, as Allowed, the Reorganized Debtors shall pay the Class 4 Lender Claim as follows:

     (i)    <u>Interest</u>.  The Class 4 Lender Claim, to the extent Allowed, shall bear interest at the Federal Postjudgment Interest Rate in effect as of the Effective Date.  The Reorganized Debtors shall make monthly payments to the Lender of said interest in arrears, commencing the month after the calendar month in which the Effective Date occurs (by way of example, if the Effective Date occurs on August 10, 2011, the first interest payment shall be due on October 1, 2011 for the period between August 10, 2011 and September 30, 2011).  Such interest payments shall be recalculated monthly based on any principal payments on the Class 4 Lender Claim during the month before, and shall be prorated for any month in which such a principal payment occurs.

     (ii)    <u>Repayment</u>.  After payment in full of the Class 3 Lender Secured Claim as provided for by this Plan, including all applicable interest, the Reorganized Debtors shall pay the principal amount of the Class 4 Claim, as Allowed, in the same manner as provided for in this Plan for the repayment of the Class 3 Lender Secured Claim through sales of the Hotels, including pursuant to sections 4.3.3, 4.3.4, 4.3.5, 4.3.8, and 4.3.9 of the Plan, as though the Class 3 Lender Secured Claim was the Class 4 Lender Claim, with the only difference being the interest payable for the Class 4 Lender Claim.

(iii) <u>Guarantee of Interest</u>.  The interest payments on the Class 4 Claim required by subsection (i) above are guaranteed by the Plan Funder as provided for in section 6.3 of the Plan.

(iv) <u>Remaining Cash</u>.  At the conclusion of the sale of all of the Hotels, in the event that the Lender Class 4 Claim, as Allowed, is not paid in full, together with all applicable interest, all remaining cash held by the Reorganized Debtors, including any finds remaining in the FFE Reserve, shall be used to pay any amount of the Allowed Lender Class 4 Claim remaining unpaid, until the Allowed amount thereof is paid in full, together with all applicable interest.

4.4.4. <u>Recovery Against Guarantors</u>.  In the event that the Lender actually recovers or receives any funds or payments from the Guarantors, and any such recovery or payment is otherwise allocated to the Debtors' principal obligations to the Lender, such amount shall be credited against the Class 4 Lender Claim if Class 4 is populated, prior to any crediting thereof against the Class 3 Lender Secured Claim.  Notwithstanding anything contained in this Section 4.3.6 or elsewhere in this Plan to the contrary, nothing in this Plan shall prejudice or otherwise adversely affect the Guarantors' right to apply or credit any recovery by the Lender (including the distributions to be made under this Plan) or any payment to the Lender to the outstanding obligations of the Debtors, if any, in any manner as may be authorized or permitted under any contract or at law or in equity.

4.4.5 <u>Preservation of Liens</u>.  Class 4 is deemed to be an Unsecured Claim under this Plan.  Notwithstanding the same, this Plan shall not strip the Lender of any lien it has against the Debtors, the Estates, the Reorganized Debtors, or their property as a result of the bifurcation of the Lender Claim, and the Lender shall retain all of its liens and security interests against the Debtors and the Estates, to the extent otherwise valid, perfected, not avoidable, and enforceable.  For further clarification, after repayment of the Lender Secured Claim in full from sales of some of the Hotels, the Lender shall retain all its liens and security interests, if otherwise valid, perfected, not avoidable, and enforceable, in all of the remaining Hotels, unless and until the Class 4 Lender Claim, as Allowed, is repaid in full.

4.4.6 <u>Default</u>.  In the event of a failure by the Reorganized Debtors to make any interest payment to the Lender as required in this section 4.4 of the Plan, the Lender may transmit notice of such failure to the Reorganized Debtors by transmitting the same, by overnight mail, to the Debtor Notice Person.  In the event the Reorganized Debtors do not cure such failure within five (5) Business Days of the transmittal of such notice, the Reorganized Debtors shall be in default of their obligations to the Lender on account of the Class 4 Claim, and the Lender may exercise any and all rights against the Reorganized Debtors and their property, including through initiating foreclosure proceedings or other appropriate proceedings against the Reorganized Debtors and their property, including the Hotels.

4.4.7 <u>Impairment</u>.  Class 4 is impaired under this Plan.

4.5     Class 5: Franchisor Claim.   The Debtors and the Franchisor have commenced negotiations geared towards a possible resolution of outstanding issues remaining between them, including: (i) the allowance of the Franchisors' claims against the Debtors; (ii) the assumption of the Franchise Agreements; and (iii) the treatment of the Franchisor under this Plan.   If such negotiations result in a settlement, the Debtors shall promptly amend this Plan or file a plan supplement containing any such settlement.   If such negotiations do not result in a settlement by the hearing on the approval of the Disclosure Statement, the claims of the Franchisors against the Debtors shall be included in Class 6 as otherwise appropriate.   If Class 5 is populated, it shall be impaired under this Plan.

4.6     Class 6: General Unsecured Claims.   Each Class 6 Claim shall be paid in full satisfaction, release and discharge of and in exchange for such Claim, but only to the extent Allowed, as provided for in this section 4.6 of the Plan.

   4.6.1   Identification of Class.   Class 6 consist of Unsecured Claims that are not otherwise part of the Class 4 Lender Claim, or the Class 5 Franchisor Claim (unless otherwise provided for in section 4.5 above), or the Class 7 Subordinated Claims.

   4.6.2   Allowance.   Unless specifically and explicitly Allowed by a section of this Plan other than section 4.6, nothing in this Plan allows any Class 6 Claim, and the Debtors and Estates retain all rights to object to the allowance of any Class 6 Claim, which rights are transferred under this Plan to the Reorganized Debtors, subject to the Claims Objection Deadline.

   4.6.3   Treatment.   In full and final satisfaction, discharge, and release of each Class 6 Claim, as Allowed, the Reorganized Debtors shall pay such claim as follows:

   (i)     Guaranteed Payment.   One-half (50%) of the principal amount of each Class 6 Claim, to the extent Allowed, shall be paid in cash by the Reorganized Debtors on the earlier of: (a) ten (10) Business Days after the Effective Date if by then Allowed or ten (10) Business Days after the Claims Objection Deadline if no objection thereto is timely filed; or (b) the date that is ten (10) Business Days after such Claim becomes an Allowed Class 6 Claim.

   (ii)    Potential Payment.   The remaining one-half (50%) of the principal amount of each Class 6 Claim, to the extent Allowed, shall be paid *pro rata* as between all Allowed Class 6 Claims from funds of the Reorganized Debtors, to the extent such funds exist, after payment in full of the Class 3 Lender Secured Claim and the Class 4 Lender Claim, within thirty (30) calendar days following the closing of the sale of the last of the Hotels.   To the extent funds remain with the Reorganized Debtors after the payment of said principal in full, such funds shall be distributed *pro rata* between all Allowed Class 6 Claims up to an amount that equals the amount of interest the second half of such Allowed Class 6 Claims would accrue on and after the Effective Date through to the date of repayment of said second half at the Federal Postjudgment Interest Rate.

4.6.4 <u>Provision for Disputed Class 6 Claims</u>. In the event that any Class 6 Claim remains a Disputed Claim as of the date of each distribution provided for in section 4.6.3 above, the Reorganized Debtors shall calculate the *pro rata* payments for Allowed Class 6 Claims as though each such Disputed Claim were an Allowed Class 6 Claim in the amount asserted by the holder thereof and not by then disallowed. However, the Reorganized Debtors shall actually make such *pro rata* payments only for Class 6 Claims that are Allowed at that time, retaining in trust the *pro rata* payments calculated on account of each such Disputed Claim. In the event that the Disputed Claim is subsequently Allowed by Final Order, the Reorganized Debtors shall pay the holder thereof the *pro rata* share so retained in trust and that would have been paid on the date of distribution had such claim been Allowed at that time, recalculated, as necessary, based on the Allowed amount of such claim. With respect to any *pro rata* shares so held in trust, any portion thereof that is not paid as a result of the disallowance by Final Order of the Disputed Claim in whole or in part, the funds so held in trust shall cease being held in trust and may be used by the Reorganized Debtors as otherwise appropriate under this Plan.

4.6.5 <u>Impairment</u>. Class 6 is impaired under this Plan.

4.7 <u>Class 7: Subordinated Claims</u>.

4.7.1 <u>Identification of Class</u>. Class 7 consist of the Claims, if any, of: (i) FFC; and (ii) the Guarantors, but does not include any claim by FFC against the Debtors or their Estates arising after the Petition Date, including, without limitation, for postpetition services provided by FFC to the Debtors and to the Estates, that would otherwise be an Administrative Claim. The Reorganized Debtors shall pay the Class 7 Claims, to the extent Allowed, only after all other Classes under this Plan are paid in full, including, without limitation, the Class 3 Lender Secured Claim, the Class 4 Lender Claim, the Class 5 Franchisor Claim, and the Class 6 Unsecured Claims (further including the second 50% portion thereof as provided for in section 4.6.3(ii) of the Plan), and the Plan Funding (as provided for in section 6.4 of the Plan). For the avoidance of doubt, no payment or other distribution shall be made on account of the Class 7 Claims unless and until all of the foregoing are paid in full, together with all applicable interest.

4.7.2 <u>Impairment</u>. Class 7 is impaired under this Plan.

4.8 <u>Class 8: Equity Interests</u>. Class 8 shall retain its equity interests under this Plan; *provided, however*, that no distribution or dividend shall be paid to any holder of Class 8 Equity Interests unless and until all payments required by this Plan to be made to any Creditor and any Class are paid in full.

# ARTICLE V.
## THE REORGANIZED DEBTORS AND POSTCONFIRMATION OPERATIONS

5.1. <u>Ownership of Reorganized Debtors</u>. The sole owner of the Debtors' membership interests, and therefore of the Reorganized Debtors' membership interests and equity, is Budget Portfolio Properties, LLC ("<u>Budget Properties</u>").

5.2 <u>Managing Member</u>. The sole managing member of each of the Reorganized Debtors will be Budget Properties, which is also the Debtors' present sole managing member. Budget Properties does not receive, and has no plans or intentions to receive, any compensation for such services, without prejudice to receiving any such compensation in the future as may otherwise be appropriate.

5.3 <u>Management of Debtors' Hotels</u>. After the Effective Date, the day-to-day management of the Hotels shall be undertaken as follows:

    5.3.1 <u>Interstate</u>. Pursuant to the Hotel Management Agreements, assumed in this Plan, Interstate manages eleven (11) of the Hotels for the Debtors, which Hotel Management Agreements and arrangements shall continue after the Effective Date between Interstate and the Reorganized Debtors.

    5.3.2 <u>Janus</u>. Pursuant to the Hotel Management Agreements, assumed in this Plan, Janus manages eleven (11) of the Hotels for the Debtors, which Hotel Management Agreements and arrangements shall continue after the Effective Date between Janus and the Reorganized Debtors.

5.4 <u>Management of Reorganized Debtors</u>. Pursuant to the FFC Agreements, assumed in this Plan, FFC actively manages the assets of the Debtors and will continue to actively manage the assets of the Reorganized Debtors following the Effective Date. The President of each of the Reorganized Debtors shall be Mr. Fred Branovan. The Chief Financial Officer and Vice-President of each of the Reorganized Debtors shall be Mr. Tom LaVelle. The General Counsel and Vice-President for each of the Reorganized Debtors shall be Mr. Greg Weingart. The Chief Operating Officer and Vice President of each of the Reorganized Debtors shall be Mr. Chris Dixon. The Reorganized Debtors reserve the right to change this senior management team as otherwise appropriate. None of the foregoing receive any compensation from the Debtors, and none of the foregoing shall receive any compensation from the Reorganized Debtors. Instead, these individuals are compensated by FFC, in part from the payments to be paid by the Reorganized Debtors to FFC under the FFC Agreements.

5.5 <u>Postpetition Operations</u>. The Reorganized Debtors shall continue to own, operate, manage, and derive income from their Hotels after the Effective Date, subject to their obligations to sell the Hotels as specified in section 4.6.3 of this Plan.

5.6 <u>Sales of the Hotels</u>. The sales of the Hotels as required by this Plan will be managed by the Reorganized Debtors, FFC, and by Kyle Stevenson of Hunter Realty Associates, Inc., who is the Bankruptcy Court approved sales broker for the Debtors.

# ARTICLE VI.
## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1     Plan Funding.  As of the Effective Date, the Plan Funder will provide the Debtors with $1,000,000.00 in cash (the "Plan Funding"), to be used by the Reorganized Debtors to make various payments required by the Plan, including for Allowed Priority Claims, Allowed Administrative Claims, and the Franchisor Claims.  No creditor or person shall have any lien or interest in the Plan Funding.

6.2     Source of Repayment.  The obligations of the Reorganized Debtors to fund their monetary obligations under this Plan shall be funded from the following sources: (i) cash on hand and on deposit; (ii) the Plan Funding; (iii) revenue and income from the operation of the Hotels after the Effective Date; (iii) proceeds from the sales of the Hotels; (iv) cash remaining after the sale of the Hotels; and (v) the Interest Guarantee.  Potential additional sources of funding, which may or may not be realized, include potential tax refunds, potential Avoidance Actions, and the potential that the Lender may recover funds from the Guarantors, which would be credited against the Reorganized Debtors' outstanding obligations, if any, to the Lender.

6.3     Interest Guarantee.  The Plan Funder hereby guarantees the timely repayment of all interest required by the Plan to be paid to the Lender for its Class 3 and Class 4 Claims (if Class 4 is otherwise populated) (the "Interest Guarantee").  The Interest Guarantee exists for the benefit of the Lender, which is an intended third party beneficiary and, in the event of a default in payment of interest by the Reorganized Debtors to the same, the Lender shall have a direct right and direct cause of action against the Plan Funder for the same.  The Plan Funder shall have no defense, setoff, counterclaim, or other right against the Lender with respect to its guarantee of said interest.  To secure the Interest Guarantee, the Plan Funder shall provide the Lender with an irrevocable letter of credit in the amount of $500,000.00 issued by a nationally recognized financial institution, which shall be constantly and automatically replenished upon any draw, and from which the Lender will be permitted to draw upon sworn representation of an uncured default by the Reorganized Debtors in the payment of interest the subject of the Interest Guarantee (and such other normal and customary documents as reasonably required by the issuer).  Any payment by the Plan Funder to the Lender under the Interest Guarantee shall be credited against the Reorganized Debtors' obligations and the Guarantors' obligations, if any, to the Lender for interest after the Effective Date.

6.4     Subordinated Claim of Plan Funder and Pledge.  The Plan Funding and the Reorganized Debtors' obligations to repay the Interest Guarantee, if drawn upon, are deeply subordinated unsecured claims of the Plan Funder against the Reorganized Debtors, automatically allowed in the amount thereof and with no need for the execution of any promissory note or other instrument, and self executing under this Plan.  Neither the Plan Funding nor the Interest Guarantee will accrue any interest.  The Reorganized Debtors may repay the Plan Funding and the Interest Guarantee, if drawn upon, to the Plan Funder only after all Classes under this Plan, except Class 7, are paid in full, together with all applicable interest. No partial or other payment shall be made by the Reorganized Debtors to the Plan Funder unless and until all such Classes are paid in full, together with all applicable interest.  The Debtors and Reorganized Debtors hereby pledge to the Plan Funder, and grant the Plan Funder a security interest in, any affirmative money recovery that the Debtors or Reorganized Debtors obtain against the Lender in the Adversary Proceeding or otherwise, to secure the repayment of the Plan

Funding and the Interest Guarantee; *provided, however,* that such pledge and security will not alter the subordination of the Plan Funder's claims as otherwise provided for in this section of the Plan; *provided further, however*, that said pledge and grant of security interest shall be and is automatically perfected under this Plan, and no additional document or instrument need be executed or recorded to evidence the same.

      6.5    <u>FFE Reserve</u>.  From cash on hand as of the Effective Date, the Reorganized Debtors shall establish as $1,000,000.00 reserve (the "<u>FFE Reserve</u>") which shall be separately segregated by the Reorganized Debtors to be used by them only to make necessary and appropriate repairs and improvements to the Hotels during the life of the Plan.  At the conclusion of the sales process for the Hotels, any funds remaining in the FFE Reserve may be used by the Reorganized Debtors to make any other distributions required by the Plan, in the priority specified by the Plan.  If the Bankruptcy Court determines that the Lender has a valid, perfected, and unavoidable interest in Cash Collateral, the FFE Reserve shall stand as additional collateral for the Lender to secure the Reorganized Debtors' obligations to the Lender under the Plan, and the Reorganized Debtors shall execute such documents as necessary to grant the Lender a perfected security interest in the FFE Reserve and as necessary to ensure that the Reorganized Debtors may draw against the FFE Reserve only for such purposes, and upon such procedures, as appropriate to ensure that the FFE Reserve is used for approved purposes.

      6.6    <u>Substantive Consolidation</u>.

          (i)    <u>Consolidated Estate</u>.  This section of the Plan creates an estate, referred to in the Plan as the Consolidated Estate, which is comprised of all legal and equitable property, rights, and interests of each of the Debtors at any time, with all of such property, rights, and interests substantively consolidated into and with the Consolidated Estate, the effect of which is that the Debtors each guarantee the obligations of each of the other Debtors and combine and merge their property and the property of the Estates for purposes of paying all claims Allowed under this Plan as otherwise Allowed and provided for in this Plan, subject to any and all liens, claims, interests, and encumbrances in such property as otherwise exists and as may be modified, released, or discharged in this Plan.  Except as otherwise provided in the Plan, a claim against any of the Debtors and any property of any of the Debtors shall attach to the Consolidated Estate and its property with the same validity, extent, and priority as otherwise exists and as provided for in this Plan.  Except as otherwise provided in the Plan, all such claims shall be paid from the Consolidated Estate and its property notwithstanding the original obligor on such claim such that any Reorganized Debtor may pay an Allowed claim against any other Reorganized Debtor.  However: (i) nothing in this Plan merges the Debtors for corporate, tax, or governmental purposes; (ii) any claim arising after the Effective Date against the Reorganized Debtors shall exist against the respective Reorganized Debtor and its property, as otherwise appropriate; (iii) the Reorganized Debtors shall maintain separate bank accounts, reporting, finances, and books and records; and (iv) in the event of property of the Consolidated Estate that is subject to a lien, encumbrances, or interest, the consolidation of the Debtors and their

property into the Consolidated Estate does not modify, affect, limit, release, discharge, or waive such lien, encumbrance, or interest, unless a different provision of this Plan effectuates such result.

(ii) <u>No Separate Existence</u>. The Consolidated Estate refers merely to the property of the Reorganized Debtors for the purpose of paying Allowed claims under this Plan and provided for in this Plan. The Consolidated Estate is not, and shall not be deemed to be, a separate legal entity or to have any legal existence, other than as provided for under this Plan as a mechanism to pay Allowed claims. The Consolidated Estate is a legal fiction, employed by this Plan for efficiency, ease, maximization of value, and the avoidance of duplicate claims and the litigation that would result from the same.

(iii) <u>Release of Intercompany Claims</u>. Any claim that any of the Debtors has against any other Debtor, related to joint and several liability, contribution, or rights of reimbursement or payment on account of the payment by one of a debt jointly owned with another, including any such debt in the capacity of co-maker or co-obligor is hereby released and discharged, including all such claims arising after the Effective Date on account of an obligation existing prior to the Effective Date.

6.7. <u>Assumption of Franchise Agreements</u>. This Plan and the Confirmation Order shall constitute an order, pursuant to section 365 of the Bankruptcy Code, assuming each of the Franchise Agreements by the Debtors and the Estates, which Franchise Agreements, as so assumed, are retained by the Reorganized Debtors pursuant to this Plan. Unless compromised and settled by the Debtors or Reorganized Debtors and the Franchisors, the Bankruptcy Court shall determine the appropriate Cure Claim payable to the Franchisors, subject to the Claims Objection Deadline and the Administrative Claim Bar Date.

6.8. <u>Assumption of Hotel Management Agreements</u>.

6.8.1 <u>Interstate</u>.

(i) <u>Assumption</u>. This Plan and the Confirmation Order shall constitute an order, pursuant to section 365 of the Bankruptcy Code, assuming each of the Hotel Management Agreements with Interstate by the Debtors and the Estates, which Hotel Management Agreements, as so assumed, are retained by the Estates and the Reorganized Debtors pursuant to this Plan.

(ii) <u>Cure Claim</u>. For and on account of the assumption of the Hotel Management Agreements, Interstate is hereby Allowed a Cure Claim in the amount of $18,295.54, to be paid by the Reorganized Debtors as provided for in Article III of this Plan and without need for the filing of an appropriate pleading under section 3.1 of this Plan.

      (iii)    <u>Dispute</u>.  In the event that Interstate disputes the amount of its Cure Claim, Interstate may file a limited objection to this Plan, in which event the Bankruptcy Court shall determine the amount of the Interstate's Allowed Cure Claim.  Absent the same, Interstate's Cure Claim shall be Allowed in the amount specified above and Interstate shall be deemed to have waived any right to challenge such amount.

      (iv)    <u>Effect of Cure Claim</u>.  Interstate's Cure Claim, as Allowed above, shall be in full and all final satisfaction of any and all claims of Interstate against the Debtors and the Estates under the Hotel Management Agreements through the Effective Date, including, without limitation, any Unsecured Claim, Cure Claim, or Administrative Claim; *provided, however,* and for the avoidance of doubt: (i) all monetary amounts owing to Interstate under the Hotel Management Agreements and arising after the Petition Date and before the Effective Date shall be paid in full by the Reorganized Debtors, if not already paid by the Effective Date, as ordinary course of business administrative expenses; (ii) all defaults of the Debtors under the Hotel Management Agreements at any time prior to the Effective Date shall be deemed fully cured within the meaning and operation of section 365 of the Bankruptcy Code; and (iii) nothing in this Plan prejudices or limits the ability and right of Interstate with respect to any default under the Hotel Management Agreements that may occur at any time after the Effective Date.

6.8.2   <u>Janus</u>.

      (i)    <u>Assumption</u>.  This Plan and the Confirmation Order shall constitute an order, pursuant to section 365 of the Bankruptcy Code, assuming each of the Hotel Management Agreements with Janus by the Debtors and the Estates, which Hotel Management Agreements, as so assumed, are retained by the Estates and the Reorganized Debtors pursuant to this Plan.

      (ii)    <u>Cure Claim</u>.  For and on account of the assumption of the Hotel Management Agreements, Janus is hereby Allowed a Cure Claim in the amount of $34,629.86, to be paid by the Reorganized Debtors as provided for in Article III of this Plan and without need for the filing of an appropriate pleading under section 3.1 of this Plan.

      (iii)    <u>Dispute</u>.  In the event that Janus disputes the amount of its Cure Claim, Janus may file a limited objection to this Plan, in which event the Bankruptcy Court shall determine the amount of the Janus' Allowed Cure Claim.  Absent the same, Janus' Cure Claim shall be Allowed in the amount specified above and Janus shall be deemed to have waived any right to challenge such amount.

(iv) <u>Effect of Cure Claim</u>. Janus' Cure Claim, as Allowed above, shall be in full and final satisfaction of any and all claims of Janus against the Debtors and the Estates under the Hotel Management Agreements through the Effective Date, including, without limitation, any Unsecured Claim, Cure Claim, or Administrative Claim; *provided, however,* and for the avoidance of doubt: (i) all monetary amounts owing to Janus under the Hotel Management Agreements and arising after the Petition Date and before the Effective Date shall be paid in full by the Reorganized Debtors, if not already paid by the Effective Date, as ordinary course of business administrative expenses; (ii) all defaults of the Debtors under the Hotel Management Agreements at any time prior to the Effective Date shall be deemed fully cured within the meaning and operation of section 365 of the Bankruptcy Code; and (iii) nothing in this Plan prejudices or limits the ability and right of Janus with respect to any default under the Hotel Management Agreements that may occur at any time after the Effective Date.

6.9. <u>Assumption of FFC Agreements</u>. This Plan and the Confirmation Order shall constitute an order, pursuant to section 365 of the Bankruptcy Code, assuming each of the FFC Agreements by the Debtors and the Estates, which FFC Agreements, as so assumed, are retained by the Estates and the Reorganized Debtors pursuant to this Plan. The Cure Claim payable to FFC on account of the same is a Subordinated Claim under Class 7 of the Plan.

6.10 <u>Omnibus Assumption of Executory Contracts</u>. Effective on and as of the Effective Date, each Executory Contract not rejected by the Debtors in the Bankruptcy Case or otherwise specifically treated in this Plan, and otherwise not terminated or expired by its own terms, shall be assumed by the Debtors and the Estates under section 365 of the Bankruptcy Code and retained by the Reorganized Debtors under this Plan. Any Cure Claim applicable thereto shall be an Administrative Claim and must be filed and served as an Administrative Claim as provided for in Section 3.1 of the Plan in order to become an Allowed Administrative Claim, and shall otherwise be treated and paid as provided for in Sections 3.1 and 3.2 of the Plan to the extent that the same is an Allowed Administrative Claim. Failure to file and serve an application for the allowance of a Cure Claim by the Administrative Claims Bar Date, as provided for in Section 3.1 of this Plan, shall result in such Cure Claim being forever barred and discharged.

6.11 <u>Corporate Existence</u>. Nothing in this Plan alters, changes, or modifies the Debtors' corporate existence. The Reorganized Debtors are and shall continue to be the same corporate entities as the Debtors.

6.12 <u>Incorporation of Rule 9019</u>. To the extent necessary to effectuate and implement the compromises and releases contained in this Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises and releases contained herein.

6.13 <u>Incorporation of Valuation Motion</u>. To the extent necessary to effectuate and implement the provisions of this Plan, the Plan shall be deemed to constitute a motion for

valuation under the Bankruptcy Code, including to value any lien, security interest, or encumbrance treated by this Plan.

6.14    Rights Under Section 505.  All Claims for taxes by Governmental Units shall remain subject to section 505 of the Bankruptcy Code, except as otherwise provided for in the Plan.  The Reorganized Debtors shall retain the right to a determination of the amount or legality of any tax pursuant to section 505 of the Bankruptcy Code.  The Reorganized Debtors may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any Claim for taxes by a Governmental Unit.

6.15    Automatic Stay.    The automatic stay provided by section 362(a) of the Bankruptcy Code shall remain in effect through to the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to separate order, and shall terminate on the Effective Date.

6.16    No Transfer Tax.  None of the transfers provided for in this Plan shall subject the Debtors, Estates, or Reorganized Debtors to any transfer, sale, bulk sale, or stamp tax.  All future sales of the Hotels by the Reorganized Debtors shall be done under this Plan and shall likewise not subject the Reorganized Debtors or their property to any transfer, sale, bulk sale, or stamp tax.

6.17    Transfer to Reorganized Debtors.    Unless this Plan specifically and explicitly releases, abandons, or transfers any property of the Debtors and the Estates otherwise, all property, assets, rights, and interests of the Debtors and the Estates are transferred under this Plan to the Reorganized Debtors and the Consolidated Estate, and retained under this Plan by the Reorganized Debtors, effective immediately and automatically on the Effective Date without need for further order, document, or action.  Such transfer is free and clear of all liens, claims, interests, and encumbrances unless specifically and explicitly preserved, retained, or created by this Plan, but subject to obligations, duties, and liabilities imposed by the Plan on the Reorganized Debtors.

6.18    Incorporation of Exhibits.  Any exhibits to this Plan, or any supplements to this Plan filed prior to the conclusion of the Confirmation Hearing, shall automatically become part of this Plan.

# ARTICLE VII.
## ACCEPTANCE OR REJECTION OF PLAN

7.1.    Impairment Controversies.  If a controversy arises as to whether any Class is impaired under this Plan, such Class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class under this Plan.

7.2.    Classes and Claims Entitled to Vote.  Unclassified Claims and Class 1 Claims are not impaired and are therefore deemed to have accepted the Plan without the necessity of voting. All other Classes (including Claims in Class 4 to the extent Class 4 is populated) are impaired under this Plan and are entitled to vote on the Plan to the extent that a Claim in such Class is not the subject of a pending objection as to allowance, or the holder of any such objected-to Claim has obtained an order from the Bankruptcy Court permitting such holder to vote on the Plan. Ballots for the acceptance or rejection of the Plan shall be mailed to holders of such impaired Classes only and to holders of such Claims within such Classes only.  Class 7 at present consists only of Insider Claims and, accordingly, the vote of Class 7 would not count for purposes of confirming the Plan on cramdown.  Class 8 is impaired.  However, because Class 8 consists of Insiders, the vote of Class 8 would not count for cramdown purposes.  Because both Class 7 and Class 8 support the Plan, they are deemed to have voted for the Plan without the necessity and expense of actual voting.

7.3.    Class Acceptance Requirement.  A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.  If no Ballots are properly returned for any particular Class, such Class shall be conclusively deemed to have voted to accept this Plan.

7.4.    Cramdown.  This section of the Plan shall constitute the request by the Debtors, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) may not be met.

7.5     Combined Voting.  Given the substantive consolidation of the Debtors under this Plan, the Plan shall treat the votes of Classes under the Plan as combined and consolidated for purposes of confirmation of the Plan, meaning that Classes will not vote separately on the Plan on a Debtor-by-Debtor basis but will instead vote on a consolidated basis.  If the Bankruptcy Court rejects this treatment, the Debtors will nevertheless handle the voting on the Plan in such a manner so as to enable the Bankruptcy Court and all interested persons to ascertain the results of voting on a Debtor-by-Debtor basis.  In such a case, the Plan must be accepted separately for each Debtor or otherwise confirmed by the Bankruptcy Court for each Debtor. For the avoidance of doubt, if the Plan is accepted or confirmed for five of the Debtors, but not the sixth, then the Plan will not become effective for any of the Debtors.  Notwithstanding the potential separate voting on the Plan, the Plan provides for unified distributions and for a single satisfaction of Claims, meaning that Creditors will not be able to aggregate Plan treatment and distributions so as to recover more than a single satisfaction of their otherwise Allowed Claims.

# ARTICLE VIII.
## TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS

8.1.    Standing to Object to Claims.  In addition to all other parties that may otherwise have standing to object to Claims, the Reorganized Debtors shall have specific standing to object to the allowance of said Claims.

8.2.    Objection Deadline.  Any objection to a Claim when the Claim is not otherwise Allowed by this Plan must be filed by the Claims Objection Deadline or be forever barred and waived.  Any Claim that is not a Disputed Claim, Disallowed Claim, or that is not objected to by the Claims Objection Deadline shall be deemed to be an Allowed Claim of the type and priority asserted in the Claim.  Unless arising from an Avoidance Action, any proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to.  Any Disputed Claim may be litigated to Final Order.  The Reorganized Debtors may compromise and settle any Disputed Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed Claim after the Effective Date.  Nothing in this Plan extends any Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late filed Claim than such Creditor has.

8.3.    Creditor Response to Objection.  With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Reorganized Debtors and the objecting party no later than the expiration of thirty (30) days from the date of service of any such objection.  Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the Objection without further notice to such Creditor.  Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same.

8.4.    No Waiver of Right to Object.  Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release or impair the Reorganized Debtors' or other appropriate party-in-interest's right to object to any Claim.  A Claim that is specifically Allowed in this Plan shall not be subject to any objection and shall be conclusively Allowed in the Bankruptcy Case, except to the extent that such Claim is subsequently asserted in an amount, priority, or classification otherwise than that specifically Allowed in this Plan.

8.5.    Miscellaneous Provisions for Disputed Claims.  Nothing contained in this Plan, the Disclosure Statement, or Confirmation Order shall change, waive or alter any requirement under applicable law that the holder of a Disputed Claim must file a timely proof of Claim, and the holder of such Disputed Claim who is required to file a proof of Claim and fails to do so, shall receive no distribution through the Plan and the Claim shall be discharged, unless this Plan specifically and explicitly provides otherwise.  The adjudication and liquidation of Disputed Claims is a determination and adjustment of the debtor/creditor relationship, and is therefore an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable.  The holder of any Disputed Claim shall not have a right to trial by jury before the Bankruptcy Court with respect to any such Claim, except with respect to any potential personal injury or wrongful death claim.  Exclusive venue for any proceeding involving a Disputed Claim

shall be in the Bankruptcy Court or District Court in the Eastern District of Texas, Sherman Division, unless the Bankruptcy Court or District Court withdraw the reference, transfer a proceeding, or abstain. Disputed Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court. The Reorganized Debtors shall retain all rights of removal to federal court as to any proceeding involving a Disputed Claim.

8.6. <u>Allowance of Disputed Claims</u>. All Disputed Claims shall be liquidated and determined as follows:

8.6.1. <u>Application of Adversary Proceeding Rules</u>. Unless otherwise ordered by the Bankruptcy Court, the proceeding involving a Disputed Claim or any objection to a Disputed Claim shall be subject to Rule 9014 of the Bankruptcy Rules. However, any party may move the Bankruptcy Court to apply the Bankruptcy Rules applicable to adversary proceedings. The Reorganized Debtors may, at their election, make and pursue any objection to a Claim in the form of an adversary proceeding.

8.6.2. <u>Scheduling Order</u>. Unless otherwise ordered by the Bankruptcy Court, or if the objection is pursued as an adversary proceeding, a scheduling order may be entered as to each objection to a Disputed Claim upon the filing of a response thereto by the holder thereof. The Reorganized Debtors may tender a proposed scheduling order with each objection and include a request for a scheduling conference for the entry of a scheduling order.

8.6.3. <u>Mediation</u>. The Court may order the parties to mediate in connection with any objection to a Disputed Claim. The Reorganized Debtors may include a request for mediation in their objection, and request that the Court require mediation as part of the scheduling order.

8.6.4. <u>Substantial Consummation</u>. All distributions of any kind made to any of the holders of Allowed Claims after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order issued under the Bankruptcy Rules.

8.6.5 <u>Offsets</u>. The Reorganized Debtors shall be vested with and retain all rights of offset or recoupment and all counterclaims against any holder of a Disputed Claim, unless specifically released in this Plan.

8.7 <u>Amendments to Claims; Claims Filed After the Confirmation Date</u>. Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court. Except as otherwise provided in the Plan, any new or amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without need for any action by the Reorganized Debtors. Notwithstanding the foregoing, and for the avoidance of doubt, the holder of a Secured Tax Claim may amend any timely filed proof of claim, where such proof of claim includes an estimated amount for year 2010 *ad valorem* taxes, in order to assert actual taxes for said year, at any time prior to Substantial Consummation.

## ARTICLE IX
## EFFECTS OF PLAN CONFIRMATION

9.1. <u>Discharge of the Reorganized Debtors</u>. The terms, covenants and consideration under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtors and the Estates, or any of their assets, including. Except as otherwise expressly provided in this Plan, upon the Effective Date, the Reorganized Debtors and their successors-in-interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, demands and liabilities that arose before the Effective Date, and all debts of any kind specified in section 502(g), 502(h), or 502(l) of the Bankruptcy Code, whether or not: (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code; (c) the holder of a Claim based upon such debt has accepted this Plan; or (d) the Claim has been Allowed, Disallowed, or estimated pursuant to section 502(c) of the Bankruptcy Code. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors and the Estates and their successors-in-interest and assigns, and the Debtors and Reorganized Debtors shall have no outstanding obligations with respect to any Claim, other than those obligations and liabilities specifically set forth pursuant to this Plan. For the avoidance of doubt, nothing in this Plan releases or discharges the Debtors, Estates, or Reorganized Debtors from any obligation imposed by, or preserved under, this Plan.

9.2. <u>Discharge Injunction</u>. Provided that the Effective Date occurs, the entry of the Confirmation Order shall, and shall be deemed to, permanently enjoin all Persons that have held, currently hold or may hold a Claim or other debt or liability against the Debtors or the Estates or their property from taking any of the following actions on account of such Claim: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtors, the Estates, or the Reorganized Debtors, with respect to any property to be distributed under the Plan or Claim that is subject to this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Estates, or the Reorganized Debtors with respect to any property to be distributed under the Plan or Claim that is subject to this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; (iii) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Debtors, the Estates, or the Reorganized Debtors, with respect to any property to be distributed under the Plan or Claim that is subject to this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; and (iv) proceeding in any manner in any place whatsoever against the Debtors, the Estates, or the Reorganized Debtors with respect to any property to be distributed under the Plan or Claim that is subject to this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan; *provided*, *however*, that such injunction shall not preclude any party in interest from seeking to enforce or interpret the terms of the Plan through an action commenced in the Bankruptcy Court or other appropriate court, or from appealing the Confirmation Order.

9.3.   No Liability for Solicitation or Participation.  Pursuant to section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

9.4.   Release of Liens.  Except as otherwise provided in this Plan or the Confirmation Order, all liens, security interests, deeds of trust, or mortgages against property of the Debtors or the Estates are released, terminated, and nullified.  The recording of the Confirmation Order and this Plan with the otherwise appropriate entity shall be conclusive evidence of said releases, terminations, and nullifications, without the need for further document or consent.

9.5.   Revesting of Property.  On the Effective Date, pursuant to section 1141 of the Bankruptcy Code, all property of the Debtors and the Estates shall automatically vest in the Reorganized Debtors and the Consolidated Estate free and clear of all liens, claims, interests, and encumbrances, except for all such liens, claims, interests, and encumbrances preserved or provided for in this Plan.

9.6.   General Release.  On the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release, except of any obligations imposed by this Plan, by: the Debtors, the Estates, and the Reorganized Debtors, any Creditor, and any Interest holder (collectively, the "Releasing Parties"), on behalf of the Releasing Parties and all their predecessors, successors, parents, direct subsidiaries, indirect subsidiaries, affiliates, assigns, heirs, agents, transferees, directors, officers, employees, and attorneys, of any and all actions, causes of action (including Chapter 5 avoidance actions), claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that the Releasing Parties now have or may have had, or thereafter claim to have, on behalf of themselves, or any other person or entity, as of the Effective Date and only if related to the Bankruptcy Case or a Claim, against: (i) Munsch Hardt Kopf & Harr, P.C., its attorneys, employees, officers, agents, and shareholders; (ii) FFC, its attorneys, employees, officers, directors, agents, and shareholders; and (iii) each individual who at any time served as an officer, director, manager, or managing member of one or more of the Debtors, from any alleged liability of any of the foregoing for an action or omission taken in the Bankruptcy Case, or with respect to a Claim in the Bankruptcy Case, or with respect to this Plan, except for any such action or omission that constitutes gross negligence, an intentional tort, breach of fiduciary duty (except simple negligence), or the disallowance or disgorgement of any fees or expenses.  For the avoidance of doubt, nothing herein releases any such person ((i) through (iii) above) from any liability: (i) as a guarantor of any Claim; (ii) as a co-debtor on any Claim; or (iii) for any independent claim or cause of action that would not be property of the Estates.

9.7.   Exculpation.  On the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that any Person may have or be able to assert

against the following solely for any actions or inactions taken by the following in, or arising against the following as a result of, the Bankruptcy Case, the Disclosure Statement, and the Plan: (i) Munsch Hardt Kopf & Harr, P.C., its attorneys, employees, officers, agents, and shareholders; (ii) FFC, its attorneys, employees, officers, directors, agents, and shareholders; and (iii) each officer, director, manager, or managing member of one or more of the Debtors; *provided, however,* that nothing contained in this Plan or the Confirmation Order shall relieve any of the foregoing from the normal requirements applicable to the allowance of an Administrative Claim or Professional Claim if approval from the Bankruptcy Court for such allowance is required, and no defenses to said allowance are waived or released.

9.8     No Discharge of Guarantors.  For the avoidance of doubt, nothing in this Plan and nothing in the Confirmation Order serves or will serve to discharge any claim, cause or action, or right that any creditor or person has against any third person or guarantor for or on account of a Claim against one or more of the Debtors, including, without limitation, any Claim that the Lender may have against the Guarantors.  For the further avoidance of doubt, nothing in this Plan prejudices any claim, cause of action, argument, right, defense, or affirmative defense that any such third person or guarantor has as a result of the confirmation of the Plan, the discharge of Claims against the Debtors and the Estates, and the repayment of debt under the Plan, including, without limitation, any claim, cause of action, argument, right, defense or affirmative defense the Guarantors may have against the Lender, including the Guarantors' right to receive credit for all amounts to be paid under this Plan to the Lender against whatever, if any, liability the Guarantors may have to the Lender under their guarantee(s).

# ARTICLE X
# CONDITIONS PRECEDENT

10.1.   Conditions Precedent to Confirmation and Effectiveness of Plan.  The Plan shall not become effective until the following conditions shall have been satisfied or waived by the Debtors:  (i) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtors; (ii) on the fifteenth (15th) day after the Confirmation Date, no notice of appeal of the Confirmation Order shall have been filed or, if filed, no order staying the Confirmation Order shall have been entered by such date; (iii) the Plan Funder shall have made the Plan Funding; (iv) all other conditions precedent in this Plan have been satisfied; and (v) a notice of the Effective Date has been filed by the Debtors in the Bankruptcy Case.

10.2.   Non-Occurrence of the Effective Date.  If this Plan is confirmed but the Effective Date does not occur within the one hundred-and-eighty (180) days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court: (i) the Confirmation Order shall be deemed vacated; (ii) all bar dates and deadlines established by the Plan or the Confirmation Order shall be deemed vacated; (iii) the Bankruptcy Case will continue as if confirmation of this Plan had not occurred; and (iv) this Plan will be of no further force and effect, with the result that the Debtors and other parties in interest will be returned to the same position as if confirmation had not occurred.  The failure of the Effective Date to occur shall not affect the validity of any order entered in the Bankruptcy Case other than the Confirmation Order or any order based thereon.

10.3.   Notice of the Effective Date.   On or before three (3) Business Days after occurrence of the Effective Date, the Reorganized Debtors shall mail to all Persons served with a copy of the Disclosure Statement a notice that informs such Persons of: (i) the occurrence of the Effective Date; (ii) the deadlines established under this Plan for the filing of Administrative Claims, Professional Claims, Cure Claims, objections to Claims, and any other pertinent deadlines; (iii) the procedures for requesting notice; (iv) the procedures for changing an address of record; and (v) such other matters as the Reorganized Debtors deem to be appropriate.

10.4.   Modification of this Plan.  The Debtors may alter, amend or modify this Plan under section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the Substantial Consummation of this Plan, the Debtors, Reorganized Debtors, or any party in interest in the Bankruptcy Case may, so long as the treatment of holders of Claims under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of this Plan; *provided*, *however*, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

10.5.   Revocation or Withdrawal of this Plan.  The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.  If the Debtors revoke or withdraw this Plan prior to the Confirmation Date, this Plan shall be deemed null and void.  In such event: (i) nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors; and (ii) the Plan shall be deemed a confidential settlement proposal under Federal Rule of Evidence 408.

# ARTICLE XI
## RETENTION OF JURISDICTION AND CLAIMS

11.1. <u>Jurisdiction of Bankruptcy Court</u>. Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court (including, as appropriate, any District Court with jurisdiction over the Bankruptcy Court) shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction to:

11.1.1. To hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

11.1.2. To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

11.1.3. To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

11.1.4. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

11.1.5. To construe and to take any action to enforce this Plan and the Confirmation Order;

11.1.6. To issue such orders as may be necessary for the implementation, execution and consummation of this Plan, including the enforcement of any discharge, release, and/or injunction in this Plan, and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation Order;

11.1.7. To hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

11.1.8. To hear and determine all applications for Administrative Claims;

11.1.9. To hear and determine other issues presented or arising under this Plan, including disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with this Plan;

11.1.10. To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

11.1.11. To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

11.1.12    To hear, authorize, and order the sale, free and clear of liens, claims, interests, and encumbrances, of any of the Hotels, in the event the Reorganized Debtors find it necessary or appropriate to seek an order authorizing the same.

11.1.13.    To enter the Final Decree upon proper request; and

11.1.14.    To hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover assets that consist of Claims, rights and causes of action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting assets; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtors, the Estates, or the Reorganized Debtors, including, without limitation, matters concerning federal, state, local and other taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code.

11.2    <u>No Prejudice to Guarantors</u>.    Notwithstanding the generality of the foregoing, nothing contained in this Plan shall be deemed to create (whether by deemed consent or otherwise) personal or subject matter jurisdiction over the Guarantors or over any dispute or action between the Lender and the Guarantors (and vice versa), including, without limitation, the pending Pennsylvania state court action between them, or to authorize the Bankruptcy Court to retain such jurisdiction to the extent it may exist as a matter of law.

11.3.    <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>.    If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in or related to the Bankruptcy Case, including with respect to the matters set forth above in Plan, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

11.4.    <u>No Creation of Jurisdiction</u>.    This Plan does not create jurisdiction in the Bankruptcy Court but only retains the Bankruptcy Court's jurisdiction as it otherwise exists.  For the avoidance of doubt, where the Bankruptcy Court has no jurisdiction, or has lost jurisdiction through abstention, remand, or withdrawal of the reference, this Plan does not purport to create or reinstate said jurisdiction; *provided, however*, that this Plan, while not creating or reinstating such jurisdiction, does not prejudice or limit the ability of the Bankruptcy Court to otherwise exercise such jurisdiction as may otherwise be conferred or reinstated.

11.5.    <u>Retention and Preservation of General Rights</u>.    Notwithstanding the confirmation of the Plan and the entry of the Confirmation Order, and notwithstanding any principle of *res judicata* or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in this Plan, the Debtors and the Estates retain any and all rights, property, and interests, all of which are transferred under this Plan to the Reorganized Debtors, regardless of whether they are scheduled, filed, or asserted prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims; (ii) affirmative defenses to Claims; (iii) setoffs and recoupments against any Claim, Creditor, or other person; (iv) rights to turnover, accounting contribution, indemnification, or reimbursement against any Creditor or other person; (v) rights under any loan document modified by this Plan, but only as so modified; (vi) rights to any tax

refund; (vii) Avoidance Actions; and (viii) claims and causes of action against any Creditor or person whatsoever, including for affirmative relief and to reduce any liability.

11.6    Retention and Preservation of Specific Rights. Without limiting the effectiveness or generality of the foregoing, and out of an abundance of caution, the Debtors specifically reserve and retain the following claims and causes of action, to be transferred to the Reorganized Debtors as otherwise provided for in this Plan:

(i)     all claims and causes of action against the Lender and T.R. Engle, including, but not limited to fraudulent transfer, equitable subordination, conspiracy, tortious interference, lender liability, and all claims and causes of action asserted by the Debtors in the Adversary Proceeding.

(ii)    all claims and causes of action against David Stauffacher and all related and affiliated persons, including for indemnification, fraudulent transfer, negligent misrepresentation;

(iii)   all claims made and all potential claims that may be made by the Debtors against any present, former, or future insurance carrier or provider or policy;

(iv)    claims, causes of action, lawsuits, and litigation commenced by the Debtors at any time prior to the Confirmation Hearing, whether in the Bankruptcy Court or otherwise; and

(v)     all rights against any holder of taxes, whether for past, present, or future taxes, including any right for purposes of future valuations, assessments, and taxes, arising under or related to section 505 of the Bankruptcy Code.

# ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.1.  <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of Title 28 of the United States Code arising prior to the Effective Date, shall be timely paid by the Debtors or by the Reorganized Debtors, subject to the rights of the Debtors and Reorganized Debtors to contest the same.

12.2.  <u>Exercise of Liens</u>.  Any lien preserved in this Plan shall, when permitted to be exercised by this Plan and applicable law, be exercised, enforced, and foreclosed in full and strict conformity with all applicable non-bankruptcy law and agreements, except to the extent specifically modified or preempted in this Plan.

12.3.  <u>No Admissions</u>.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtors with respect to any matter set forth herein including, without limitation, liability of any person on any Claim or the propriety of any classification of any Claim.

12.4.  <u>Plan Controls</u>. To the extent there is an inconsistency or ambiguity between any term or provision contained in the Disclosure Statement and the Plan, the terms and provisions of the Plan shall control.

12.5.  <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal or state laws are applicable, or any prepetition contract provides for the application of the law of a different state, the laws of the State of Texas shall govern the construction, implementation and enforcement of this Plan and all rights and obligations arising under this Plan, without giving effect to the principles of conflicts of law.

12.6.  <u>Substantial Consummation of Plan</u>.  The Plan shall be deemed to be substantially consummated upon the date of Substantial Consummation.

12.7.  <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of such Person.

12.8.  <u>Severability</u>.  Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Person, the Debtors may, in their discretion, alter, delete, or modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision.  Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect, provided that the Bankruptcy Court otherwise confirms the Plan.

12.9.  <u>Notices and Distributions</u>.  On and after the Effective date, all notices, requests and distributions to a holder of a Claim shall be sent to the last known address of: (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Claim filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the

last known address of the holder according to the books and records of the Debtors. Any holder of a Claim may designate another address for the purposes of this section by providing the Reorganized Debtors written notice of such address, which notice will be effective upon receipt by the Reorganized Debtors as otherwise appropriate.

12.10. <u>Unclaimed Property</u>. If any property to be distributed on account of this Plan remains unclaimed for a period of one (1) year after it has been delivered (or delivery has been attempted) or has otherwise been made available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Reorganized Debtors free and clear of any rights, claims or interests.

12.11. <u>Binding Effect</u>. The Plan shall be binding on and inure to the benefit of the holders of Claims and Interests (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns as provided for by the Bankruptcy Code.

12.12. <u>Withholding and Reporting</u>. In connection with this Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding and reporting requirements. Notwithstanding anything herein to the contrary, in calculating and making the payments due to Allowed Claims hereunder, the Reorganized Debtors shall be authorized to deduct from such payments any necessary withholding amount.

12.13. <u>Other Documents and Actions</u>. The Debtors and the Reorganized Debtors, and any Creditor, may execute such documents and take such other action as is reasonable, necessary, or appropriate to effectuate the transactions provided for in this Plan, *provided, however,* that no such document or action shall prejudice the right or any Person under this Plan except by agreement between the Reorganized Debtors and such Person.

12.14 <u>Debtor Notice Person</u>. Any notice required to be delivered to the Reorganized Debtors under this Plan, or which may be delivered to the Reorganized Debtors for any purpose under this Plan, shall, in order to effective for purposes of this Plan and any right hereunder, be sent by overnight courier or mail, to the following (the "<u>Debtor Notice Person</u>"), unless the notice of Effective Date specifies otherwise:

> FFC Capital Corporation
> Attn: General Counsel
> 625 Liberty Ave., Suite 3110
> Pittsburgh, PA 15222

# ARTICLE XIII
## CONFIRMATION REQUEST

The Debtors hereby request confirmation of this Plan pursuant to section 1129(a) of the Bankruptcy Code or, in the event that this Plan is not accepted by each of those Classes of Claims entitled to vote, section 1129(b) of the Bankruptcy Code.

**DATED: MAY 15, 2011.**

**DEBTORS-IN-POSSESSION**

By: /s/ Fred Branovan
  Fred Branovan
  President


**BPP PLAN FUNDING, LLC**

By: /s/ Fred Branovan
  Fred Branovan
  Authorized Representative

**MUNSCH HARDT KOPF & HARR, P.C.**


By:  /s/ Davor Rukavina
  Joseph J. Wielebinski, Esq.
  Texas Bar No. 21432400
  Davor Rukavina, Esq.
  Texas Bar No. 24030781
  Zachery Annable, Esq.
  Texas Bar No. 24053075
  Jonathan L. Howell, Esq.
  Texas Bar No. 24053668
  3800 Lincoln Plaza
  500 North Akard Street
  Dallas, Texas 75201-6659
  Telephone: (214) 855-7500
  Facsimile: (214) 855-7584

**ATTORNEYS FOR THE
DEBTORS-IN-POSSESSION**