
08/18/2011

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § § | Case No. 10-44378 |
| BPP TEXAS, LLC, *ET. AL.*, | § § | Jointly Administered |
| Debtors. | § § | |

**AGREED ORDER: (I) APPROVING SALE OF O'HARE AIRPORT HOTEL FREE AND CLEAR; (II) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS RELATED TO THE SAME; AND (III) APPROVING PAYMENT FROM PROCEEDS**

CAME ON FOR CONSIDERATION the *Debtors' Motion for Approval of (i) Sale of O'Hare Airport Hotel Free and Clear; and (ii) Assumption and Assignment of Executory Contracts Associated with the O'Hare Airport Hotel* (the "Motion"), filed by BPP Texas, LLC, BPP Illinois, LLC, BPP Iowa, LLC, BPP Michigan, LLC, BPP Minnesota, LLC, and BPP Wisconsin, LLC (collectively, the "Debtors"), the debtors-in-possession in the above styled and numbered jointly administered bankruptcy case (the "Bankruptcy Case"). Based on the Motion, the representations therein, the exhibit thereto, and on the absence of any timely objection to the Motion, it is hereby:

ORDERED that the Motion is GRANTED; it is further

ORDERED that one or more of the Debtors, including specifically BPP Illinois, LLC, owns good and marketable title to real property, improvements, and fixtures located at 2881 Touhy Avenue, Elk Grove Village, Illinois, 60007 and run as a Baymont Inn & Suites hotel (the "O'Hare Hotel"), in which, other than real property liens, Citizens Bank of Pennsylvania (the "Lender") claims perfected liens and security interests, and which, with the authority of this Court, the Debtors may sell free and clear of all liens, claims, interests, and

encumbrances; it is further

ORDERED that the *Purchase and Sale Agreement*, dated July 25, 2011 (the "Agreement") attached to the Motion as Exhibit "A" is APPROVED in all respects, and the Debtors are authorized to sell the O'Hare Hotel pursuant to the terms thereof, and to otherwise execute, deliver, and effectuate the Agreement, and to execute, deliver, and record such other documents and instruments as may be advisable or necessary to implement and effectuate the Agreement and this Order; *provided*, *however*, the Closing Date (as defined in the Agreement) must occur on or before October 1, 2011 (the "Closing Deadline"); *provided further*, however, that the Closing Deadline may be extended by the Debtors without further approval of this Court by up to an additional 30 days with written consent by the Lender (which Lender agrees to provide unless it has good business reasons to decline to provide); it is further

ORDERED that, upon payment of the gross purchase price in the Agreement (which shall be not less than $3,955,511, less the adjustment for current year *ad valorem* taxes as provided for in the Agreement and discussed below) (the "Proceeds"), LNG, LLC (the "Buyer") shall hold title to the O'Hare Hotel free and clear of all liens, claims, interests, and encumbrances existing against the same, except for any year 2011 tax liens and any liens or security interests that the Buyer causes to be placed against the same concurrently with the closing of the Agreement, or thereafter; it is further

ORDERED that all liens, claims, interests, and encumbrances of which the O'Hare Hotel is sold free and clear shall attach to the Proceeds with the same validity, extent, and priority as otherwise exists; it is further

ORDERED that the Buyer is a *bona fide*, good faith, purchaser for value and that, as

the Debtors and the Buyer have negotiated the Agreement in good faith, through arm's length negotiations, and free of any collusion, the Buyer is entitled to the maximum protections available under 11 U.S.C. § 363(m); it is further

ORDERED that, conditioned on the closing of the Agreement:

- Hunter Realty Associates, Inc. is hereby allowed brokerage fees under section 328 of the Bankruptcy Code in the amount of 3% of the Proceeds, which the Debtors may pay at the closing of the Agreement;

- the Debtors may pay all accrued, due and unpaid ad *valorem real* and business personal property taxes against the O'Hare Hotel with respect to the period up to and through the Closing Date from the Proceeds, including all applicable interest (in an amount not to exceed $170,000.00 in the aggregate);

- the Debtors may grant the Buyer a credit for *pro-rata* year 2011 taxes with respect to the period up to and through the Closing Date from the Proceeds, including all applicable interest (in an amount not to exceed $80,000.00 in the aggregate);

- if the Debtors' Chapter 11 plan is confirmed prior to the Closing Date, the sale of the O'Hare Hotel shall be deemed to be effectuated under the plan and no transfer tax shall be payable, and all governmental entities and persons are prohibited from seeking to collect the same from the Debtors or the Buyer, or asserting any right or lien on account of the same against the O'Hare Hotel, but if said plan is not confirmed by the Closing Date, the Debtors are authorized to pay all applicable transfer taxes (in an amount not to exceed $20,000.00); and

- the Debtors may pay all ordinary and customary closing costs, including the fees of the title company, from the Proceeds (in an amount not to exceed $15,000.00 in the aggregate) (such brokerage fees, taxes and interest, potential transfer taxes, and closing costs, collectively, the "Closing Adjustments"); it is further

ORDERED that, from the Proceeds, the Debtors shall reserve the sum of $60,000.00 (the "Reserve") and shall not use the same, and such Reserve shall remain subject to the Lender's liens pending the adjudication of either: (i) the validity of the lien filed by Dr. Restoration, LLC and of any alleged superior priority of said lien as against the lien of the

Lender; or (ii) any motion or proceeding by the Debtors to avoid said lien as a potential stay violation or otherwise, whereafter such Reserve shall be paid to Dr. Restoration, LLC or the Lender depending on such adjudication, *provided*, *however*, that for the avoidance of doubt, the O'Hare Hotel shall be sold free and clear of all liens, claims, interests, and encumbrances of Dr. Restoration, LLC without need to await any such adjudication; it is further

ORDERED that, the Debtors shall pay the Closing Adjustments and shall pay to the Lender at the Closing Date 100% of the Proceeds less only the Closing Adjustments and the Reserve provided for above (such net amount to be paid to the Lender, the "Net Proceeds") and Lender shall apply the Net Proceeds to the Lender's claim against the Debtors' estates (the "Lender Claim") in such order and priority as the Lender may elect in its discretion; *provided*, *however*, that if there is a chapter 11 plan confirmed in the Bankruptcy Case, such payment shall be applied to the secured portion of the Lender Claim or shall otherwise reduce the secured portion thereof under section 506(a) of the Bankruptcy Code, but only as against the Debtors and their estates, and the application of such payment as against any guarantor shall be in the Lender's discretion notwithstanding anything to the contrary in this Order; *provided further*, *however*, that such payment shall not be deemed any finding or preclusive order that the Lender has any perfected, valid, binding, or unavoidable lien or security interest in any property of the Debtors; it is further

ORDERED that the Debtors are authorized to assume each of the Assumed Contracts, as defined in the Motion, and to assign the same to the Buyer under the Agreement, conditioned on the closing of the Agreement, for the payment of such cure claims totaling not greater than $80,000 in the aggregate (as specified in the Motion) to be paid at or immediately after the Closing Date, from the Debtors' cash collateral, and the Lender consents to the use

of its cash collateral for such payments; it is further

ORDERED that:

(a) BPP Illinois, LLC ("Debtor") has acknowledged that: (i) Debtor and Baymont Franchise Systems, Inc. ("BFS") entered into a Franchise Agreement effective February 6, 2008, which Franchise Agreement and any amendments or related agreements which were executed in writing between the parties are collectively referred to herein as the "Franchise Agreement"; (ii) pursuant to the Franchise Agreement, Debtor is authorized to operate the Hotel as a "Baymont"® guest lodging facility; (iii) as of the Petition Date, the Debtor was absolutely liable to BFS in the amount of at least $73,440.88 as set forth in BFS's proof of claim; and (iv) post-petition, the Debtor has continued to hold the O'Hare Hotel out to the general public as a "Baymont"® hotel and the Debtor has generated revenue post petition via the continued use of the "BFS Marks" and the "BFS System".

(b) Prior to the date of any assignment of the Franchise Agreement as otherwise provided for in this Order, the Debtor shall comply with all monetary and non-monetary post petition obligations imposed under the Franchise Agreement. The Debtor is authorized and directed to pay BFS any and all amounts which are or will become due by the Debtor under the Franchise Agreement from the Petition Date through the Closing Date, except with respect to interest and attorney's fees, which are otherwise dealt with below. Any such indebtedness shall be paid in full and without compromise by the Debtor to BFS as and when set forth in the Franchise Agreement. Such amounts shall be paid from

the Debtors' cash collateral, and the Lender consents to the use of its cash collateral for such payments.

(c) On the Closing Date, the Franchise Agreement will be assumed by the Debtor pursuant to 11 U.S.C. §365(a) and (b) effective as of the Closing Date. In the event that the closing does not occur, the Debtor reserves the right to reject the Franchise Agreement.

(d) The Franchise Agreement shall be assigned by the Debtor to the Buyer pursuant to 11 U.S.C. §365(f), effective as of the Closing Date subject to and conditioned upon: (i) issuance of the requisite disclosure documents by BFS to the Buyer prior to the Closing Date; (ii) receipt from the Buyer of the application and application fee requested by BFS, prior to the Closing Date; (iii) approval by BFS, prior to the Closing Date, of the Buyer as a licensee/assignee which approval or disapproval shall be in the reasonable sole discretion of BFS; and (iv) satisfaction by the Debtor and/or the Buyer of all of the provisions of this Order. Subject to satisfaction of the foregoing contingencies and the effective assignment of the License Agreement, the Buyer shall assume all of the rights and obligations of the Debtor under the Franchise Agreement as well as the obligations of the Debtor to BFS pursuant to this Order.

(e) Pursuant to 11 U.S.C. §365(b)(1)(C) and (f)(2)(B), the Buyer shall, on the Closing Date, execute and deliver to BFS a fully authorized and executed version of the "Assumption Agreement" in the form provided by BFS to the Buyer. The Assumption Agreement between BFS and the Buyer shall, among

other things: (i) reflect the assignment of the Franchise Agreement to the Buyer; (ii) provide for cure of any outstanding quality defaults by the Buyer within forty-five days of the Closing Date (unless such quality default relates to a punch list item, in which case the cure period shall be governed by the provision of the Assumption Agreement dealing with the punch list items); (iii) require completion of the punch list items as and when set forth in the Assumption Agreement; and (iv) provide guarantees of payment and performance of the Buyer under the License Agreement by all of the shareholders of the Buyer and those additional parties as may be agreed upon by BFS and the Buyer and set forth in the Assumption Agreement. (In lieu of an Assumption Agreement, BFS, the Debtor and the Buyer may agree to: (i) a "Termination and Release Agreement" with respect to the Franchise Agreement, and (ii) the entry of a new license or franchise agreement between BFS and the Buyer. These agreements would mirror the provisions of the Assumption Agreement with the exception of (e)(i)).

(f) Pursuant to 11 U.S.C. §365(b)(1), the Debtor shall cure all defaults under the Franchise Agreement relating only to the O'Hare Hotel as of the Closing Date as follows: (i) the Debtor shall pay BFS $73,440.88 on account of the amounts due prepetition under the Franchise Agreement; and (ii) the Debtor shall pay BFS any amounts relating only to the O'Hare Hotel due postpetition under the Franchise Agreement through to the Closing Date, except with respect to attorney's fees and interest which may be claimed due by BFS. Such amounts shall be paid from the Debtors' cash collateral, and the Lender consents to the

use of its cash collateral for such payments. BFS reserves its right to file an administrative claim for attorney's fees and interest, by separate application, and nothing in this Order prejudices the ability of BFS to assert the same or the ability of the Debtors, the Lender, or anyone else to contest the same.

(g) Pursuant to 11 U.S.C. §365(k), the assignment of the Franchise Agreement as contemplated by this Order shall relieve the Debtor from liability for a breach of the Franchise Agreement by the Buyer occurring after the Closing Date provided, however, that nothing contained herein shall relieve the Debtor from the "cure liabilities" set forth in paragraph (f) above in the event that such liabilities to BFS are not satisfied by the Buyer. Moreover, the assignment of the Franchise Agreement shall not act to relieve any guarantor from existing or future obligations or liabilities to BFS under said guaranty; it is further

ORDERED that, for the avoidance of doubt, any payment authorized by this Order to any entity shall not be considered a surcharge under 11 U.S.C. § 506(c) against the O'Hare Hotel or against the Proceeds, and the Debtors waive any right to apply for such surcharge, without prejudice to their ability to seek a surcharge with respect to any other hotel or property; it is further

ORDERED that this Order may be recorded in any real property record, County record, or other appropriate location or governmental authority, and that this Order alone shall be sufficient to effectuate its terms and dictates as against anyone and everyone; it is further

ORDERED that, notwithstanding anything contained herein to the contrary, there shall be no transfer of title to any property to the Buyer unless the Proceeds are paid as required and potentially adjusted by the Agreement; it is further

ORDERED that any title, closing, or escrow agent holding the Proceeds shall comply with this Order; it is further

ORDERED that this Order and the Agreement shall be binding in all respects upon all creditors of the Debtors, all parties-in-interest in the Bankruptcy Case, any holder of an interest in the Property, and any successor-in-interest of the Debtors; it is further

ORDERED that this Court shall retain jurisdiction to the maximum extent possible to interpret and enforce this Order.

SO ORDERED.

Signed on 8/18/2011

_____ SR
HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

[SIGNATURE PAGE FOLLOWS]

**AGREED:**

**MUNSCH HARDT KOPF & HARR, P.C.**            **BROWN RUDNICK LLP**

By: /s/ Davor Rukavina                                               By: /s/ James E. Stoll (*w/ permission*)
    Joseph J. Wielebinski                                          William R. Baldiga
    Texas Bar No. 21432400                                       Admitted *Pro Hac Vice*
    Davor Rukavina                                                      James W. Stoll
    Texas Bar No. 24030781                                       Admitted *Pro Hac Vice*
    3800 Lincoln Plaza                                                  One Financial Center
    500 North Akard Street                                          Boston, MA 02111
    Dallas, Texas 75201-6659                                      Telephone: (617) 856-8200
    Telephone: (214) 855-7500                                    Facsimile: (617) 856-8201
    Facsimile: (214) 855-7584

**ATTORNEYS FOR THE**                                        **ATTORNEYS FOR CITIZENS**
**DEBTORS-IN-POSSESSION**                            **BANK OF PENNSYLVANIA**


**FORMAN HOLT ELIADES & RAVIN, LLC**

By: /s/ Daniel M. Eliades (*w/ permission*)
    Daniel M. Eliades
    N.J.D.C. #DSC 6203
    80 Route 4 East
    Paramus, New Jersey 07652
    Telephone: (201) 845-1000
    Facsimile: (201) 845-9112

**ATTORNEYS FOR HOWARD**
**JOHNSON INTERNATIONAL, INC.**